STATE of Minnesota, Respondent,

v.

Kris Alan HAHN, Appellant.

No. A10–780.

Court of Appeals of Minnesota.

May 31, 2011.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by
SCHELLHAS, Presiding Judge;
SHUMAKER, Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

On appeal from his conviction of first-degree criminal sexual conduct, appellant argues that (1) he was denied a speedy trial; (2) the district court committed reversible error by allowing the state to introduce sexually explicit images of the victim found on appellant's computer; (3) the district court erred by ordering that appellant's sentences be served consecutively; and (4) the victim's testimony should have been excluded under the doctrine of judicial estoppel. We conclude that appellant was not denied a speedy trial and that the district court properly admitted both the images of the victim and the victim's testimony. But because concurrent sentencing was presumptive, and because the district court failed to articulate a valid basis for a sentencing departure, we reverse the sentence and remand for resentencing consistent with this opinion.

## FACTS

On September 4, 2007, the state charged appellant Kris Alan Hahn with the crime of criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. 1(a) (2004). The complaint alleged that in or between July 2005 and August 2005, appellant (born March 18, 1957) twice raped K.H., the daughter of an old friend of appellant. K.H. turned 12 on July 28, 2005. After the second rape, appellant took pictures of K.H. in the nude and wearing her mother's lingerie; he posed her, among other places, in her baby sister's crib and in the bathtub. In December 2006, appellant took more pictures of K.H., two of which were subsequently found on appellant's computer and admitted at trial: one depicts K.H. clothed, in a sexually suggestive pose, and another is an unclothed close-up of her genitalia. In spring 2007, K.H. told her mother, B.H., about the rapes and the photographs, and B.H. reported them to the police. In investigating the allegations, police officers seized appellant's computer and discovered pornographic pictures of K.H. on it. The police also discovered that appellant had

attached the images to e-mail that he sent to K.H.

In a separate proceeding, appellant was charged in federal court with one count of production of child pornography in violation of 18 U.S.C. § 2251(a), (e) (2006). Appellant pleaded guilty to that charge, and on January 23, 2009, he was sentenced to 210 months in prison. The resolution of appellant's case in state court was deferred while the federal case proceeded.

Appellant's first appearance on the state charge after the federal sentencing was in February 2009. On March 26, 2009, appellant moved pro se to dismiss the state complaint on the grounds that he had received ineffective assistance of counsel and been deprived of a speedy trial. On April 24, 2009, appellant's counsel withdrew from the case. On August 10, appellant moved to suppress the photographs of K.H. found on his computer and statements that he had made during the plea and sentencing hearings in his federal case. On September 25, the district court denied appellant's motion to dismiss for denial of a speedy trial. Before trial, the district court denied appellant's motions to exclude the photographs of K.H. and the statements that appellant had made at his plea and sentencing hearings in the federal case. K.H. testified at trial, and over appellant's objection, the district court allowed the jury to see several photographs that appellant had taken of K.H.

The jury found appellant guilty and found, in response to a question submitted by the court following the verdict, that appellant had penetrated K.H. more than once. The presentencing report recommended a sentence of 144 months (the presumptive sentence), to be served consecutively to the federal sentence. At the February 8, 2010 sentencing, the district court stated that the jury's finding that appellant penetrated his victim more than

once provides a basis for either a durational departure or for imposing the sentence consecutive to the federal sentence. The district court sentenced appellant to 100 months in prison, to be served consecutive to the federal sentence. Appellant moved the district court to reconsider his motion to dismiss the charge on the ground that he was denied a speedy trial; the district court denied the motion. This appeal follows.

## ISSUES

I. Was appellant denied his right to a speedy trial?

II. Did the district court abuse its discretion by admitting into evidence photographs of K.H. taken by appellant?

III. Did the district court abuse its discretion by ordering that appellant serve his state sentence consecutive to his unexpired federal sentence?

IV. Did the district court abuse its discretion by failing to exclude K.H.'s testimony pursuant to the doctrine of judicial estoppel?

## ANALYSIS

### I.

 Appellant argues that the case should have been dismissed because he was denied a speedy trial. A speedy-trial challenge presents a constitutional question subject to de novo review. *State v. Cham*, 680 N.W.2d 121, 124 (Minn.App. 2004), *review denied* (Minn. July 20, 2004). "The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 6 of the Minnesota Constitution." *State v. DeRosier*, 695 N.W.2d 97, 108 (Minn.2005). "By rule in Minnesota, trial is to commence within 60 days from the date of the demand unless good cause is shown ...

why the defendant should not be brought to trial within that period." *Id.* at 108–09 (citing Minn. R.Crim. P. 6.06, 11.10).

■ In determining whether an accused has been deprived of the right to a speedy trial, Minnesota courts have adopted the four-factor balancing test announced by the United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *State v. Widell,* 258 N.W.2d 795, 796 (Minn.1977). The four factors are: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the delay prejudiced the defendant. *State v. Windish,* 590 N.W.2d 311, 315 (Minn.1999). No one factor is necessary to or dispositive of a determination that a defendant was denied the right to a speedy trial; the factors must be considered together in light of the relevant circumstances. *Id.*

## A. Length of Delay

■ In Minnesota, a delay of more than 60 days from the date of the speedy-trial demand is presumptively prejudicial, triggering review of the remaining three factors. *Id.* at 315–16. Here, the record shows that appellant demanded a speedy trial on March 26, 2009,[1] and that trial began on November 9, 2009 (228 days later), indicating that consideration of the other *Barker* factors is warranted.

## B. Reason for Delay

■ The responsibility for promptly bringing a case to trial rests with the state. *Barker,* 407 U.S. at 529, 92 S.Ct. at 2191. Although the state has the primary burden of ensuring a speedy trial, delays are assigned different weights in assessing whether a defendant's speedy-trial right has been violated. *Id.* at 531, 92 S.Ct. at 2192; *Cham,* 680 N.W.2d at 125. Deliberate attempts at delay weigh heavily against the state. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. "[N]egligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* But "[t]he defendant cannot expect this court to allow him to delay his own trial to a point where we find there was a speedy trial violation [and] when the overall delay in bringing a case to trial is the result of the defendant's actions, there is no speedy trial violation." *State v. Johnson,* 498 N.W.2d 10, 16 (Minn.1993).

Appellant concedes that 29 days of the delay between March 26 and November 9, 2009, are attributable to his own actions. As to the remaining days, he asserts that "the record here does not indicate the overall delay was due to the actions of [a]ppellant." The record, however, does not support appellant's contention that his contribution to the delay is negligible.

At a March 26 hearing, appellant requested that the matter be continued until "the week after next" to give him extra time to consider a plea agreement. The district court continued the matter until April 15. Trial was scheduled for July 27. At the April 15 hearing, appellant's counsel (who was also appellant's counsel in a related federal case) told the district court that appellant had recently filed a motion in federal court to have him (counsel) declared incompetent to represent appellant. After appellant refused to affirm, on the record, that he thought his counsel was competent to represent him in his state

---

1. Although appellant's motion is signed and dated March 26, 2009, the Register of Actions indicates that it was not filed until April 6. For the purposes of the speedy-trial analysis, we will use March 26 as the date of demand.

court case, the district court continued the matter until April 24 to give appellant time to find another lawyer, which he failed to do. A public defender was therefore appointed on April 29; at a May 6 hearing, the public defender requested continuance of the trial date, and the hearing on the request was set for May 29. At the May 29 hearing, the district court granted appellant's request for a continuance of the trial date, and continued the trial to November 9.[2] At pretrial hearings on June 12 and September 1, the district court noted that discovery was complicated by the current unavailability of discoverable materials from the federal case and by appellant's federal suit against his former counsel. At a hearing on November 5, 2009, the district court announced that appellant had moved the federal court to add him (the district court judge) as a defendant in appellant's federal lawsuit against his former counsel. At the same hearing, appellant requested that his trial be delayed until after the November 24 hearing on his motion to add the judge to the federal suit. On November 9, the day of trial, appellant stopped the distribution of jury questionnaires to move the district court judge to recuse himself.

Appellant's attempts to delay the trial after requesting a speedy trial weigh against him for the purposes of a *Barker* analysis. *See id.* (observing that demands for a speedy-trial right do not favor defendant where the assertions are followed by additional defense motions delaying the trial). The record establishes that the delay from April 15 to May 29, as well as the decision to move the trial from July 27 to November 9, are directly attributable to appellant's decision to fire his private counsel and use a public defender. The record is also clear that many other delays not directly attributable to appellant were caused by the procedural complexities of appellant's simultaneous involvement in various other legal actions, including the pornography case; appellant's federal case against his attorney, the district court judge in the state case, and others; and a state felony gun charge. And although appellant contends that the majority of the delay cannot be attributed to him, he does not contend that the state acted in bad faith to delay his trial or that the state engaged in any dilatory conduct; instead,

**2.** Appellant argues that because the record contains no transcript of either the May 6 hearing or the May 29 hearing, and because the Register of Actions does not indicate who requested a continuance on May 6, the state's argument (based on the Register of Actions) that appellant requested the continuance must be rejected. Appellant is correct that the register reveals only that a continuance of trial date was requested on May 6, and not by whom. The Register of Actions is part of the "official records of the clerk of the [d]istrict [c]ourt." *State ex rel. Craig v. Tahash,* 263 Minn. 158, 162, 116 N.W.2d 657, 660 (1962) (taking judicial notice of indications in Register of Actions that defendant was represented by counsel). And here, the register, when considered along with the transcripts and register reports of contemporaneous events in the case, permits an inference that appellant made the request. At the April 15 hearing,

when appellant suggested that he might replace his counsel, the district court stated that it "need[ed] to know if [the new] lawyer is going to be available July 27th," the date set for trial. At the April 29 hearing, the district court appointed a public defender and noted that trial was set for July 27. The state then noted that the parties were to appear before Judge Daly on May 6, and that "any changes in the trial date have to be approved by Judge Wernick." After the May 6 appearance, the register reflects that on May 29, Judge Wernick scheduled trial for November 9. Thus, after the district court noted the trial date and the state indicated that any change to the trial date was subject to approval by Judge Wernick, the trial date was changed by Judge Wernick. We also note that although appellant suggests that the state offers insufficient proof that he requested the continuance, he never asserts that he did not request it.

he suggests, without providing any supporting record evidence, that the delay may have been caused by routine court congestion occasioned by budget constraints.

■ It is true that "good cause for delay does not include calendar congestion unless exceptional circumstances exist." *State v. Griffin*, 760 N.W.2d 336, 340 (Minn.App.2009). But the state does not allege, and there is no evidence, that such congestion delayed appellant's trial here: to the contrary, the record shows that the district court repeatedly acted to promptly address and accommodate appellant's various requests for continuances and postponements. And administrative delay, by itself, is generally insufficient to violate a defendant's speedy-trial right in the absence of a deliberate attempt to delay trial. *See Cham*, 680 N.W.2d at 125 (holding that even a 23–month delay attributable to district court administration, although "unusually long," did not weigh against the state because "the prosecution did not act in bad faith to delay the proceeding").

■ On this record, we conclude that appellant bears responsibility for the overall delay in bringing the case to trial. In addition to the conduct described above, appellant submitted a series of pro se motions that the district court addressed and which necessarily delayed the proceedings. Delays caused by defense motions generally weigh against the defendant. *See DeRosier*, 695 N.W.2d at 108. Because there is no evidence that the state intentionally delayed the proceeding and because appellant contributed to the delay, this factor does not weigh in favor of appellant's argument that he was denied a speedy trial.

**C. Assertion of Right**

■ A defendant's assertion of the right to a speedy trial need not be formal or technical, and it is determined by the

circumstances. *Windish*, 590 N.W.2d at 317. A court must assess "the frequency and intensity of a defendant's assertion of a speedy trial demand—including the import of defense decisions to seek delays." *Id.* at 318. While there is no requirement that a defendant continue to reassert the demand, this court considers the frequency and force of the speedy-trial demand because "the strength of the demand is likely to reflect the seriousness and extent of the prejudice." *State v. Friberg*, 435 N.W.2d 509, 515 (Minn.1989).

Appellant first raised the speedy-trial issue on March 26, 2009, approximately 18 months after his arrest, and only then in the context of a pro se motion to dismiss the case for ineffective assistance of counsel. Although the district court construed the motion as a motion for a speedy trial, it is in fact a motion to dismiss the case based on a violation of appellant's right to a speedy trial. Moreover, after appellant filed this motion, he requested that trial be delayed several times on various grounds, which undermines the force of his speedy-trial request. *See Johnson*, 498 N.W.2d at 16. Appellant also raised the speedy-trial issue in his posttrial motion to reconsider the earlier motion to dismiss. Appellant's posttrial memorandum in support of his motion contains no argument on the speedy-trial issue; it merely reproduces lengthy sections of our decision in *Griffin*. Like the earlier motion, it asks that the case be dismissed based on violation of appellant's right to a speedy trial. In *Cham*, we wrote that "[w]hen a defendant moves for dismissal, but does not move for a speedy trial, this factor will not favor the defendant." 680 N.W.2d at 125.

**D. Prejudice**

■ Prejudice is measured in light of the interests that the speedy-trial right is designed to protect. *Barker*, 407 U.S. at

532, 92 S.Ct. at 2193. The interests that must be considered are: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility that the defense will be impaired. *Windish,* 590 N.W.2d at 318. The third interest, possible impairment of a defendant's defense, is the most important. *Id.*

Appellant's only argument on this factor is the bare assertion that he suffered anxiety and concern over his future and how the case was being handled. This anxiety had to do mostly with appellant's dissatisfaction with his counsel, which in fact caused appellant to delay the trial. And appellant does not demonstrate how his anxiety over his future, which is understandable in a person who has already been convicted of a serious pornography offense and knows he may also be found guilty of raping a 12–year–old, is greater than the anxiety of any other defendant. *See Friberg,* 435 N.W.2d at 515 (stating that "the stress, anxiety and inconvenience experienced by anyone who is involved in a trial" is insufficient to constitute prejudice for the purposes of a *Barker* analysis). Oppressive pretrial incarceration is not an issue here because during these proceedings, appellant was serving a sentence as a result of the federal pornography conviction. And appellant has not shown how the delay hampered his ability to present his defense.

In light of all the *Barker* factors, we conclude that appellant was not deprived of his right to a speedy trial. While it is true that the length of the delay alone (228 days or almost eight months) is not insignificant, the other factors weigh heavily in favor of the state: the majority of the delays, including the decision to continue the trial from July 27 to November 9, 2009, are fairly attributable to appellant,

and in any case were not deliberately caused by any bad-faith conduct on the part of the state. Appellant did not vigorously assert his right to a speedy trial; instead, he made two requests to dismiss based on violation of his right to a speedy trial. And he did not show that he was prejudiced by the delay.

## II.

Appellant argues that the district court committed reversible error by admitting images of K.H. taken by appellant in December 2006.[3] We review a district court's decision to admit evidence for abuse of discretion. *State v. Bolstad,* 686 N.W.2d 531, 541 (Minn.2004). "Absent a clear abuse of discretion, a district court's evidentiary ruling will not be reversed." *Id.* Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403. Unfair prejudice "does not mean the damage to the opponent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *State v. Bolte,* 530 N.W.2d 191, 197 n. 3 (Minn.1995) (quotation omitted). "Evidence that is probative, though it may arouse the passions of the jury, will still be admitted unless the tendency of the evidence to persuade by illegitimate means overwhelms its legitimate probative force." *State v. Schulz,* 691 N.W.2d 474, 478–79 (Minn.2005).

Even if the evidence was erroneously admitted, the verdict may stand if the error was harmless beyond a reasonable doubt, meaning that the verdict was "surely unattributable to the error." *State v. Morton,* 701 N.W.2d 225, 233 (Minn.

---

**3.** Appellant does not challenge the admission of the 2005 photographs on appeal.

2005) (quotation omitted). In applying the harmless-error standard, appellate courts "consider the manner in which the evidence was presented, whether the evidence was highly persuasive, whether it was used in closing argument, and whether it was effectively countered by the defense." *State v. Courtney*, 696 N.W.2d 73, 80 (Minn.2005). "Evidence of the defendant's guilt is also a relevant consideration, but it is not the sole factor." *Id.*

 The admission of photographs is a matter left to the discretion of the district court. *Morton*, 701 N.W.2d at 237. "[P]hotographs are not rendered inadmissible just because they vividly depict a shocking crime or incidentally tend to arouse the passions and prejudices of the jurors." *Id.; see State v. Hummel*, 483 N.W.2d 68, 74 (Minn.1992) (stating that the district court may admit "photographs, even ghastly ones, so long as they show something that a witness could describe and are material to some relevant issue").

In challenging the admission of the photographs, appellant argued, as he does on appeal, that the images were not relevant because they did not portray sexual contact between K.H. and himself, and therefore were not probative of criminal sexual conduct, and that the images were prejudicial because they might lead the jury to convict him on the basis of a perceived character trait instead of evidence of criminal sexual conduct. The district court ruled that the photographs were admissible, reasoning that they would corroborate K.H.'s testimony and help the jury weigh her credibility, that they showed appellant's state of mind and his ongoing relationship with K.H., and that they were "inherently related" to the charged conduct.

The district court reviewed each photograph before admitting it, asked the state what each was intended to prove, and ex-plicitly balanced the images' probative value against their potential for creating unfair prejudice. The district court specifically considered the risk that the jury would treat the images as evidence of appellant's propensity to engage in certain behavior rather than evidence of a common scheme or plan. The district court considered the concept of res gestae, that is, the images' relevance to the state's claim that there was an ongoing illicit relationship between K.H. and appellant, as a factor that would tend toward admissibility, despite the amount of time separating the mid–2005 rapes from the December 2006 photographs. The district court also noted that the state limited the number of pictures offered (eight out of 97 available) in order to minimize the risk of prejudice and the images' cumulative effect and to ensure that each picture had "independent relevance."

The district court correctly determined that the two December 2006 images were relevant in that they corroborated K.H.'s testimony and were probative of the occurrence of the offense, particularly because appellant's defense at trial was that K.H. had fabricated the allegations against him. K.H. testified that appellant raped her twice, took photographs after the second time, and took photographs in December 2006. The two December 2006 photographs tended to show the truth of K.H.'s contention that appellant photographed her in 2006 and allowed the jury to better assess the credibility of her contentions concerning the 2005 rapes (which she described in testimony) and the 2005 photographs (six of which were admitted at trial). The 2006 photographs are also relevant to show appellant's motive or intent. *See* Minn. R. Evid. 404(b).

The probative value of the images, given appellant's denial defense, was strong, and the district court gave the jury a caution-

ary instruction to help prevent the risk of prejudice to appellant. Appellant argues that the images were not necessary because the state's computer expert testified about the type and nature of the images. But "[p]hotographs are generally admissible where they accurately portray anything which is competent for a witness to describe orally, and [where] they are relevant to some material issue." *State v. Durfee*, 322 N.W.2d 778, 785 (Minn.1982).

Appellant argues that the admission of the images constitutes reversible error because the state's case was so weak that the verdict is surely attributable to the images. But the state's case relied primarily on K.H.'s testimony and included the six 2005 images admitted into evidence without objection. In light of the other evidence of guilt, it is not reasonable to assert, as appellant does, that the verdict was in any way attributable to the admission of the two 2006 images. The district court properly admitted the 2006 photographs.

### III.

■ Appellant argues that the district court improperly imposed consecutive sentences for his state criminal-sexual-conduct offense and his federal child-pornography offense. He contends that because concurrent sentencing is presumptive in his case, and because the district court did not articulate a valid basis for an upward sentencing departure, the court was bound to impose a concurrent rather than a consecutive sentence. The state contends that consecutive sentencing is permissive and that, even if it is not, the district court provided a valid basis for departure.

We first consider whether the imposition of consecutive sentences is permissive under the sentencing guidelines. This issue requires interpretation of the sentencing guidelines, which is a question of law subject to de novo review. *State v. Rannow*, 703 N.W.2d 575, 577 (Minn.App.2005).

■ Generally, "[a] state sentence must be presumed to run concurrently with the Federal sentence when there has been no specific determination by the [district] court." *State v. Wakefield*, 263 N.W.2d 76, 77 (Minn.1978). But under the 2005 Minnesota Sentencing Guidelines,[4] consecutive sentences are permissive in seven circumstances, including the following: "A current felony conviction for a crime on the list of offenses eligible for permissive consecutive sentences found in Section VI may be sentenced consecutively to a prior felony sentence for a crime listed in Section VI which has not expired or been discharged." Minn. Sent. Guidelines II.F.1.

First-degree criminal sexual conduct, the second offense for which appellant was convicted, is on the list of offenses eligible for permissive consecutive sentences in section VI. Minn. Sent. Guidelines VI. Appellant's prior offense—producing child pornography in violation of 18 U.S.C. § 2251(a), (e)—is a federal offense that is not listed in section VI. We have previously held that the list of offenses in section VI is exhaustive and not subject to modification. In *State v. Johnson*, we reversed consecutive sentences imposed for two counts of attempted second-degree murder because that offense is not listed in section VI. 756 N.W.2d 883, 896 (Minn. App.2008), *review denied* (Minn. Dec. 23,

4. Although the jury was not asked to find the exact date of the state offense here, appellant agrees that the 2005 Minnesota Sentencing Guidelines, applicable to offenses occurring after August 1, 2005, apply to the sentencing of the state offense. To the extent that all or part of appellant's offense occurred before August 1, 2005, he has waived the argument that the 2004 Minnesota Sentencing Guidelines should apply.

2008). Noting both the interpretive canon that "the expression of one thing implies the exclusion of all others" and the "general rule that penal statutes are to be strictly construed," we concluded that if an offense was omitted from the list, it was because "the guidelines commission intended to exclude it. If the commission meant to include all attempted offenses, it would not have listed attempted first-degree murder as the only attempted homicide in section VI." *Id.* at 895.

Similarly, we are bound to conclude here that if the guidelines commission meant to include federal offenses in section VI, or provide a means for identifying federal offenses analogous or equivalent to the included Minnesota offenses for the purposes of permissive consecutive sentencing, it would have done so, as it did in other sections of the guidelines. In section II.B.5, for instance, the guidelines provide a mechanism for determining whether a foreign conviction should be designated as a felony in calculating an offender's criminal-history score: "The designation of out-of-state convictions as felonies, gross misdemeanors, or misdemeanors shall be governed by the offense definitions and sentences provided in Minnesota law." Minn. Sent. Guidelines II.B.5 (2005); *see also* Minn. Sent. Guidelines, cmt. II.B.501–.504 (providing that the sentencing court making the designation should look to the offense definition, "the nature" of the offense, and "the sentence received by the offender," and compare the definition of foreign offense with definitions of comparable Minnesota offenses); *Hill v. State*, 483 N.W.2d 57, 61 (Minn.1992) (reviewing sentencing court's decision whether to designate out-of-state conviction as felony).

The state argues that *State v. Sundstrom* supports its assertion that section VI of the sentencing guidelines should be interpreted as including appellant's prior federal offense. 474 N.W.2d 213 (Minn. App.1991). We disagree. In support of its position, the state relies on the following dictum: "We have little doubt, however, whatever rules of law apply when a Minnesota sentence is made consecutive to a previously-imposed Minnesota sentence apply equally when the sentence is previously imposed by a federal court." *Id.* at 216. This language stands for the proposition that the Minnesota Sentencing Guidelines are not rendered inapplicable by the fact that the prior offense is federal or foreign. But this language does not compel the conclusion that the exhaustive list of offenses allowing for consecutive sentencing includes federal offenses. Further, *Sundstrom* was decided under a previous version of the sentencing guidelines when the threshold criterion for permissive consecutive sentencing was that each offense be a "crime against a person." Minn. Sent. Guidelines II.F.1 (2004). There was nothing in this previous version of the sentencing guidelines that limited these offenses to a specifically delineated list. *See, e.g., State v. Mattson*, 376 N.W.2d 413, 414 n. 1 (Minn.1985) (noting that a Minnesota sentence could have been imposed consecutive to a previously imposed Wisconsin sentence because the Wisconsin sentence was imposed for a crime against a person); *see also State v. Myers*, 627 N.W.2d 58, 63 (Minn.2001) (observing that appellant did not dispute that his prior federal bank robbery conviction could constitute a crime against a person for purposes of consecutive sentencing under the Minnesota guidelines). We therefore find *Sundstrom* inapposite.

The state also argues that interpreting the guidelines as providing that appellant's federal sentence is not "a prior felony sentence for a crime listed in Section VI" would produce an absurd result by unreasonably undervaluing the penal con-

sequences of appellant's first-degree criminal-sexual-conduct conviction and effectively imposing no extra prison time for appellant's state offense. *See* Minn.Stat. § 645.17 (2010) ("In ascertaining the intention of the legislature [courts may presume that] the legislature does not intend a result that is absurd, impossible of execution, or unreasonable....").

We acknowledge that it is difficult to conclude that the legislature intended offenders in appellant's position to avoid a discrete sentence for a conviction of first-degree criminal sexual conduct solely because the prior offense, by virtue of having been sentenced in a foreign jurisdiction, does not appear on the list of offenses in section VI of the guidelines. And we agree with the state that concurrent sentencing in this circumstance appears to minimize both the injury done to appellant's victim and the penalty (and importance) of the criminal conduct of which he was actually convicted. But we see no basis, given the clear language of the guidelines as written, and in the absence of a clear directive to the contrary, to depart from the guidelines' plain meaning in order to reach a specific result. *See Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 123 (Minn.2007) ("[Courts] construe statutes to effect their essential purpose but will not disregard a statute's clear language to pursue the spirit of the law."). We simply have no authority to substitute our sense of what the guidelines should say for what they do say.

Construing the 2005 guidelines strictly, as we must, we conclude that the guidelines do not unambiguously authorize us to read federal offenses into a list where none in fact appear. Appellant's federal offense therefore fails to meet the threshold criterion for permissive consecutive sentencing under the guidelines and concurrent sentencing was presumptive here.

Because concurrent sentencing was presumptive, the use of consecutive sentences "constitutes a departure from the guidelines and requires written reasons." Minn. Sent. Guidelines II.F (2005). A district court may only depart from the presumptive sentence specified in the sentencing guidelines if there are "identifiable, substantial, and compelling circumstances" to warrant an upward departure from the presumptive sentence. Minn. Sent. Guidelines II.D (2005). "Substantial and compelling circumstances are those demonstrating that the defendant's conduct in the offense of conviction was *significantly* more or less serious than that typically involved in the commission of the crime in question." *State v. Jones*, 745 N.W.2d 845, 848 (Minn.2008) (quotation omitted). A district court's decision to depart from a presumptive sentence is reviewed for an abuse of discretion. *State v. Stanke*, 764 N.W.2d 824, 827 (Minn.2009). Reversal is warranted only if the reasons given for departure are inadequate or improper and there is insufficient evidence in the record to justify the departure. *State v. Jackson*, 749 N.W.2d 353, 357 (Minn. 2008).

Whether a valid basis for an upward sentencing departure exists is a question of law. *Dillon v. State*, 781 N.W.2d 588, 595 (Minn.App.2010), *review denied* (Minn. July 20, 2010). "The reasons used for departing must not themselves be elements of the underlying crime." *State v. Blanche*, 696 N.W.2d 351, 378–79 (Minn.2005); *see also State v. Osborne*, 715 N.W.2d 436, 447 (Minn.2006) (holding that elements of lesser-included offenses "cannot support upward sentencing departures"). And departures cannot be based on uncharged or dismissed offenses. *Taylor v. State*, 670 N.W.2d 584, 588 (Minn.2003).

Here, after the jury found appellant guilty, the district court asked the jury to determine beyond a reasonable doubt, as a sentencing aid, whether appellant had penetrated K.H. more than once. The jury answered that he had. The district court used the fact that appellant had penetrated his victim more than once as an aggravating factor to justify the upward sentencing departure.

Appellant contends that the jury's finding of multiple acts of penetration was an invalid basis to enhance his sentence, arguing that because he was charged with only one count of first-degree criminal sexual conduct despite two distinct acts of penetration, the second act of penetration is uncharged conduct and cannot therefore justify the sentencing departure. We agree. In *State v. Adell,* we considered a similar situation. 755 N.W.2d 767 (Minn. App.2008), *review denied* (Minn. Nov. 25, 2008).

In *Adell,* the appellant argued that the aggravating factor of multiple acts of sexual abuse found by his sentencing jury was impermissibly used to enhance his sentence because it was based on uncharged conduct to the extent that the state could have, but chose not to, charge him with multiple acts of abuse. *Id.* at 774. We held that "the district court's reliance upon the aggravating factor of multiple acts of sexual abuse was improper because that portion of appellant's conduct was uncharged criminal conduct." *Id.; see also State v. Simon,* 520 N.W.2d 393, 394 (Minn.1994) (holding that the prosecution should not "use the fact that it might have been able to obtain a conviction of a greater offense" to support a departure). Here, the state charged appellant with one count of Minn.Stat. § 609.342, subd. 1(a) (2004), which requires proof of only a single act of penetration, rather than with Minn.Stat. § 609.342, subd. 1(h)(iii) (2004), which re-

quires proof of multiple acts and proof of a "significant relationship" between the actor and the complainant. The district court then used the second act as a basis to depart. As such, the departure was impermissibly based on uncharged conduct. *See Adell,* 755 N.W.2d at 774; *see also Jackson,* 749 N.W.2d at 364 n. 4 (Gildea, J., dissenting) (observing that the supreme court in *Simon* was concerned about the prosecution manipulating a defendant's sentence by charging him with a lesser offense and using an element of a more serious offense to justify a departure). Finally, we note that while "[t]he fact that a defendant has subjected a victim to multiple forms of penetration is a valid aggravating factor in first-degree criminal sexual conduct cases," multiple acts of penetration are not a valid factor when, as here, they are simply uncharged conduct. *Adell,* 755 N.W.2d at 774.

Because consecutive sentencing was a departure from the presumptive sentence, the district court was required to provide valid, substantial, and compelling circumstances to justify the departure. But the district court erred by using the jury's finding of multiple acts of penetration as a basis to enhance appellant's sentence. We therefore reverse the sentence and remand for resentencing consistent with this opinion.

## IV.

 Appellant argues in a pro se supplemental brief that K.H.'s testimony should have been excluded pursuant to the doctrine of judicial estoppel. Judicial estoppel "is intended to prevent a party from assuming inconsistent or contradictory positions during the course of a lawsuit." *State v. Pendleton,* 706 N.W.2d 500, 507 (Minn.2005). Appellant contends that K.H. lied during her testimony and that

the district court should have, sua sponte, excluded her testimony.

■■■ Judicial estoppel has not yet been adopted by the Minnesota courts, and it is beyond our mandate to adopt it now. *See Lake George Park, L.L.C. v. IBM Mid–Am. Emps. Fed. Credit Union,* 576 N.W.2d 463, 466 (Minn.App.1998) ("This court, as an error correcting court, is without authority to change the law."), *review denied* (Minn. June 17, 1998). "[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." *Tereault v. Palmer,* 413 N.W.2d 283, 286 (Minn.App.1987), *review denied* (Minn. Dec. 18, 1987). We also observe that, to the extent appellant is challenging the weight of K.H.'s testimony and her credibility, "weighing the credibility of witnesses is the exclusive function of the jury." *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn.1980).

## DECISION

Because appellant's right to a speedy trial was not violated and the district court properly admitted both the images of K.H. and her testimony, we affirm appellant's conviction of first-degree criminal sexual conduct. But because concurrent sentencing was presumptive and because the district court did not articulate a valid basis for an upward sentencing departure, we reverse the sentence and remand for resentencing consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**

SCHELLHAS, J., concurring in part, dissenting in part.

---

5. Prior to the 2005 amendment, consecutive sentences were permissive for a current felony conviction for a crime against a person following a prior felony sentence for a crime

SCHELLHAS, Judge (concurring in part, dissenting in part).

I concur with the majority's conclusions that (1) appellant was not deprived of his right to a speedy trial, (2) the district court properly admitted the 2006 photographs, and (3) multiple acts of penetration was not a valid basis for departing upward from the presumptive guidelines sentence. But I respectfully dissent from the majority's conclusion that the district court's imposition of a sentence consecutive to appellant's prior federal production-of-child-pornography sentence constituted a departure from the guidelines that had to be justified by findings on the record. The majority concludes that the legislature did not intend to include federal offenses in section VI of the guidelines, and because appellant's federal conviction of production of child pornography is not a crime listed in Section VI of the Minnesota Sentencing Guidelines, as amended in 2005,[5] consecutive sentencing is not permissive. I disagree.

In 1963, long before enactment of the Minnesota Sentencing Guidelines, the Minnesota legislature enacted Minnesota Statutes section 609.15. 1963 Minn. Laws ch. 753, art. 1, § 609.15, at 1196. Section 609.15 (2004) provides, in pertinent part, that

> when separate sentences of imprisonment are imposed on a defendant for two or more crimes, whether charged in a single indictment or information or separately, or when a person who is under sentence of imprisonment in this state is being sentenced to imprisonment for another crime committed prior to or while subject to such former sentence, *the court in the later sentences*

against a person when the first sentence had not expired or been discharged. Minn. Sent. Guidelines II.F (2004).

*shall specify whether the sentences shall run concurrently or consecutively. If the court does not so specify, the sentences shall run concurrently.*

(Emphasis added.) As noted by the Minnesota Supreme Court in *State v. Petersen*, 305 Minn. 478, 481, 235 N.W.2d 801, 803 (1975), "the common-law rule of this state was that where two or more sentences of imprisonment are imposed upon the same person, they are to be served concurrently *unless the court expressly directs that they be served consecutively.*" [6] (Emphasis added.) The *Petersen* court noted that the common-law rule "failed to distinguish between sentences imposed by the courts of the same state and sentences imposed by courts of two or more different jurisdictions." *Petersen*, 305 Minn. at 481, 235 N.W.2d at 803.

*Petersen* involved the imposition of a state sentence followed by the imposition of a federal sentence. *Id.* At sentencing, the federal court made no mention of the state conviction or sentence and "expressed no opinion relative to whether the Federal sentence should run consecutively to or concurrently with the state sentence." *Id.* at 479, 235 N.W.2d at 802. While serving the federal sentence, the defendant challenged the state sentence, arguing that under section 609.15, "his state sentence should be interpreted to have been concurrent with this Federal sentence rather than consecutive to it." *Id.* at 480, 235 N.W.2d at 803. The supreme court held that section 609.15 did not apply to the federal sentencing court because "[i]t applies only to courts of this state, and only to the second sentencing court." *Id.* at 481, 235 N.W.2d at 803.

Of significance to this case, in which the federal sentence is the first sentence, the *Petersen* court stated: "Even assuming that there had been a prior sentence by the Federal court in this case, there should be no presumption that the sentences were to be served concurrently." *Id.* at 481–82, 235 N.W.2d at 803.

In *State v. Wakefield*, 263 N.W.2d 76, 77 (Minn.1978), the supreme court addressed a situation in which the first sentence was a federal sentence and the second was a state sentence. In *Wakefield*, the court applied section 609.15 and held that "the state sentence must be presumed to run concurrently with the Federal sentence *when there has been no specific determination by the trial court.*" 263 N.W.2d at 77 (emphasis added). The *Wakefield* court did not suggest, in dicta or otherwise, that the second sentencing court lacked the discretion to impose the state sentence to run consecutively to the federal sentence, as the district court did in the case now before us. And the *Wakefield* court specifically recognized that "[b]y its plain wording [section 609.15] applies only to sentences imposed by Minnesota courts." *Id.*

In *State v. Jennings*, 448 N.W.2d 374, 375 (Minn.App.1989), the court held that a defendant serving a felony sentence imposed by a California court has the right to demand execution of a sentence previously imposed by a Minnesota court. But the holding was based entirely on the preference for concurrent sentencing in Minnesota and California and as expressed in the ABA Standards. 448 N.W.2d at 375. In *Jennings*, as in *Wakefield*, the second sentencing court (California) apparently did

---

**6.** "[T]his common-law rule was abrogated as early as 1886 by statutory provisions that a sentencing judge had no discretion to make the sentence *concurrent.*" *Petersen*, 305 Minn. at 481, 235 N.W.2d at 803 (emphasis added). Section 609.15 "readopted the common-law rule." *Id.*

not specify whether its sentence would run concurrently or consecutively. *Id.*

In *State v. Sundstrom,* 474 N.W.2d 213, 216 (Minn.App.1991), a case involving the imposition of two state court sentences consecutive to a previously imposed federal court sentence, this court concluded that the second sentencing "court erred in determining it was not a departure from the guidelines to impose a consecutive sentence." This court based its conclusion on the fact that the current sentences did not involve crimes against persons or escapes from custody and therefore did not qualify for permissive consecutive sentencing under the guidelines in effect at that time. 474 N.W.2d at 215.

In *State v. Johnson,* 756 N.W.2d 883, 895 (Minn.App.2008), *review denied* (Dec. 23, 2008), noting that "[c]onsecutive sentencing is permissive when there are multiple current felony convictions for crimes listed in section VI of the guidelines," this court held that consecutive sentencing is not permissive for attempted second-degree intentional murder offenses because attempted second-degree intentional murder is not a crime listed in section VI of the guidelines. This court stated: "We find no evidence that the guidelines commission intended to depart from [the general policy favoring significantly reduced penalties for attempted crimes compared to those for the completed offense] and make consecutive sentencing permissive for attempted crimes other than attempted first-degree murder." 756 N.W.2d at 895. Similar to *Sundstrom,* the *Johnson* holding focused on the current offense, not the offense underlying the prior felony sentence. *Id.*

The *Johnson* court was not presented with the question now before us—the construction of the guidelines with respect to presumptive concurrent sentencing with, or permissive consecutive sentencing to, a prior felony sentencing by a court of another jurisdiction. In addressing the question, this court must construe the guidelines as amended in 2005. "In construing provisions of the sentencing guidelines, the supreme court has treated the guidelines as if they are a collection of statutes and has applied the rules of statutory construction." *Johnson,* 756 N.W.2d at 895 (citing *State v. Maurstad,* 733 N.W.2d 141, 148 (Minn.2007)). To construe the meaning of the guidelines to exclude permissive consecutive sentencing in all cases in which the prior felony sentence was imposed by a different jurisdiction is, in my opinion, to conclude that the legislature intended a result that is absurd and unreasonable. This court may presume that the legislature did not intend such a result. Minn.Stat. § 645.17 (2010).

I would hold that the guidelines, as amended in 2005, do not restrict permissive consecutive sentencing to circumstances in which both the current and prior sentences are imposed by a Minnesota state court. Accordingly, I would conclude that sentencing appellant to 100 months for first-degree criminal sexual conduct consecutive to his executed federal prison sentence for production of child pornography was permissive. Such a conclusion is consistent with Minnesota caselaw and virtually all authorities. *See Herman v. Brewer,* 193 N.W.2d 540, 543–44 (Iowa 1972) (stating that when the sentencing is by the court of different sovereigns, "virtually all authorities" do not apply the general rule that sentences imposed for two crimes committed in the same state are presumptively concurrent); *see also Merchant v. State,* 374 N.W.2d 245, 246 (Iowa 1985) (stating that "Iowa adheres to the general rule that unless the Iowa sentencing court specifies otherwise an Iowa sentence is consecutive to the prior sentence of another sovereign"). To conclude oth-

erwise "fails to distinguish between sentences imposed by the court of the same state [Minnesota] and sentences imposed by courts of two or more different jurisdictions." *Petersen,* 305 Minn. at 481, 235 N.W.2d at 803.

I would affirm the district court's sentence of 100 months' imprisonment [7] to run consecutively to appellant's federal sentence for production of child pornography.

**7.** Appellant's 100–month sentence for first-degree criminal sexual conduct constitutes a downward durational departure from the guidelines for which no valid basis was stated on the record by the district court. Minn. Sent. Guidelines IV (Supp.2005).