*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1410**

State of Minnesota,
Respondent,

vs.

Jeremiah James Shefelbine,
Appellant.

**Filed June 13, 2016**
**Affirmed**
**Schellhas, Judge**

Houston County District Court
File No. 28-CR-14-1009

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Karin L. Sonneman, Winona County Attorney, Special Assistant Houston County Attorney, Winona, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

      Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and Bratvold, Judge.

**UNPUBLISHED OPINION**

**SCHELLHAS**, Judge

Appellant challenges his convictions of third-degree controlled-substance crime and introduction of contraband into a correctional facility, arguing that his right to a speedy trial was violated. We affirm.

**FACTS**

On October 23, 2014, a jailer in the Houston County Jail discovered that an inmate, appellant Jeremiah Shefelbine, had concealed a small plastic bag in a body cavity. The bag contained 4.419 grams of a mixture containing methamphetamine. On December 8, respondent State of Minnesota charged Shefelbine with second-degree controlled-substance crime in violation of Minn. Stat. § 152.022, subd. 1(1) (2014) (sale of three grams or more of mixture containing methamphetamine), third-degree controlled-substance crime in violation of Minn. Stat. § 152.023, subd. 2(a)(1) (2014) (possession of three grams or more of mixture containing methamphetamine), and introduction of contraband into a correctional facility in violation of Minn. Stat. § 641.165, subd. 2(a) (2014).

On December 9, 2014, the district court appointed a public defender for Shefelbine. At a January 9, 2015 hearing, Shefelbine pleaded not guilty and requested a jury trial. On January 21, when trial already was scheduled for March 19, Shefelbine filed a written request for a speedy trial. On March 18, at a pretrial hearing, the court found good cause to continue the trial due to the Houston County Attorney's potential conflict of interest,

despite Shefelbine's complaint about the trial delay. The court reset the trial date to April 22.

On April 22, 2015, the district court cancelled the trial because of an insufficient number of potential jurors from which to select a jury. On May 18, the case proceeded to a jury trial after the state dismissed the charge of second-degree controlled-substance crime. The jury found Shefelbine guilty of third-degree controlled-substance crime and introduction of contraband into a correctional facility. The court sentenced Shefelbine to 57 months' imprisonment for third-degree controlled-substance crime as a subsequent controlled-substance conviction and imposed no sentence for introduction of contraband into a correctional facility.

This appeal follows.

**D E C I S I O N**

"Criminal defendants have the right to a speedy trial under the constitutions of both the United States and Minnesota." *State v. Taylor*, 869 N.W.2d 1, 19 (Minn. 2015) (citing U.S. Const. amend. VI; Minn. Const. art. I, § 6). "Claimed Sixth Amendment violations are subject to de novo review." *Id.* In considering a speedy-trial challenge, "[appellate courts] must consider: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay prejudiced the defendant." *Id.* (quotation omitted). "None of these factors is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they

3

are related factors and must be considered together with such other circumstances as may be relevant." *Id.* (quotation omitted).

### *Length of delay*

"The delay in speedy-trial cases is calculated from the point at which the sixth amendment right attaches: when a formal indictment or information is issued against a person or when a person is arrested and held to answer a criminal charge." *State v. Jones*, 392 N.W.2d 224, 235 (Minn. 1986). "A delay that exceeds 60 days from the date of [a speedy-trial] demand [made after entry of a plea other than guilty] raises a presumption that a violation has occurred, and [appellate courts] must apply the remaining factors of the test." *Taylor*, 869 N.W.2d at 19; *see* Minn. R. Crim. P. 11.09(b) (providing that 60-day period "begins on the date of the plea other than guilty"). Even so, "the length of the delay only serves as a starting point for a speedy trial analysis." *State v. Johnson*, 498 N.W.2d 10, 15 (Minn. 1993).

Here, Shefelbine demanded a speedy trial on January 21, 2015. The case proceeded to a jury trial on May 18, which was 117 days after Shefelbine's speedy-trial demand and 161 days after the state charged him on December 8, 2014. The delay presumptively violated Shefelbine's speedy-trial right, and we therefore analyze the remaining speedy-trial factors.

### *Reason for delay*

Regarding delay, "the key question is whether the government or the criminal defendant is more to blame for the delay." *Taylor*, 869 N.W.2d at 19 (quotation omitted). "Delays caused by defense motions generally weigh against the defendant." *State v. Hahn*,

799 N.W.2d 25, 32 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011); *see also State v. DeRosier*, 695 N.W.2d 97, 109 (Minn. 2005) (stating that "[w]hen the overall delay in bringing a case to trial is the result of the defendant's actions, there is no speedy trial violation" and determining that "delay in bringing the matter to trial was occasioned by defense motions for a change of venue, continuances, and a Rule 20 evaluation"); *Johnson*, 498 N.W.2d at 16 (attributing bulk of trial delay to defendant whose "own motions were the primary reason for much of the delay"). Even as to delay that weighs against the state, "different weights should be assigned to different reasons." *Taylor*, 869 N.W.2d at 20 (quotation omitted). "For instance, a deliberate delay to hamper the defense weighs heavily against the prosecution, while neutral reasons such as negligence or overcrowded courts weigh less heavily." *Id.* (quotations omitted).

### *Delay from March 19 to April 22, 2015*

On March 17, 2015, at a hearing on unrelated charges, Shefelbine raised the issue of the Houston County Attorney's potential conflict of interest, stating that the county attorney previously represented him. On March 18, the county attorney informed the district court that he represented Shefelbine at an extradition hearing on unrelated charges in 2012. Although the county attorney opined that the current case and the 2012 extradition proceedings were not substantially related, he explained that the Minnesota Board of Professional Responsibility had informed him that "it probably would be the best policy if [he] did not [prosecute] Mr. Shefelbine." The county attorney informed the court that he therefore had called the Winona County Attorney's Office, which had agreed to prosecute Shefelbine.

For reasons not reflected in the record, Shefelbine appeared without counsel at the hearing on March 18, 2015, despite previously having been appointed a public defender. Without the advice of counsel, Shefelbine told the district court that he believed that "no conflict whatsoever" existed. The court then asked Shefelbine whether he was willing to waive any potential conflict of interest arising from the Houston County Attorney's prosecution of the current case, and Shefelbine responded affirmatively. Based on Shefelbine's uncounseled "waiver," the court asked the county attorney whether he was prepared to commence trial the next day. The county attorney declined to prosecute the case, and the court then found "good cause to continue the matter" due to the county attorney's potential conflict, noting that Shefelbine did not raise the conflict-of-interest issue "until the eleventh hour prior to the scheduled trial date."

Shefelbine now argues that no conflict of interest prohibited the Houston County Attorney from prosecuting him because the current case and the 2012 extradition proceedings were unrelated and because he had "*explicitly waived any such conflict on the record in open court.*" The record before us is insufficient to determine whether a conflict of interest prohibited the Houston County Attorney from prosecuting Shefelbine due to the county attorney's prior representation of Shefelbine.

As to Shefelbine's purported waiver of the Houston County Attorney's potential conflict of interest, we conclude that it was ineffective because his consent was uninformed—his attorney was not present—and he did not offer his consent in writing. *See* Minn. R. Prof. Conduct 1.9(a) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in

6

which that person's interests are materially adverse to the interests of the former client *unless the former client gives informed consent, confirmed in writing*." (emphasis added)). Despite Shefelbine's attempted waiver of the county attorney's potential conflict of interest, based on the county attorney's prior representation of Shefelbine and the advice that the county attorney received from the Minnesota Board of Professional Responsibility, we conclude that the district court did not abuse its discretion by continuing Shefelbine's trial so that the Winona County Attorney could assume the prosecution of Shefelbine. *Cf. State v. Patterson*, 812 N.W.2d 106, 107, 109, 112 (Minn. 2012) (concluding that district court did not abuse its discretion by disqualifying defendant's attorney, despite defendant's waiver of his right to conflict-free counsel in light of his attorney's past representation of codefendant and state's witnesses, and noting that "[o]n appeal from a conviction, a defendant might argue that his right to conflict-free counsel was violated, even if the defendant waived that right, creating the possibility that the trial court might be whip-sawed by assertions of error no matter which way they rule" (quotation omitted)).

Here, nothing in the record suggests that the Houston County Attorney's request for a continuance due to his potential conflict of interest was a deliberate delay intended to hamper Shefelbine's defense. The record instead reflects that the county attorney appropriately sought advice from the Minnesota Board of Professional Responsibility to determine whether he should prosecute Shefelbine and declined to prosecute him out of an abundance of caution, based on the board's advice. We conclude that the delay from March 19 to April 22, 2015, weighs only slightly against the state.

7

*Delay from April 22 to May 18, 2015*

The delay from April 22 to May 18, 2015, resulted from an insufficient number of potential jurors from which to select a jury. Having ordered the sheriff to gather prospective jurors, the district court noticed that a number of the prospective jurors were "closely aligned with law enforcement." The court stated that two of the individuals "were heavily involved in the campaign for the sheriff" and surmised that Shefelbine would not want the individuals on a jury "even if they said they would be fair and impartial." Shefelbine thanked the court and agreed with the court's decision. The court also noted that Shefelbine was being held on other unrelated charges and that "th[e alleged offenses in this case] happened only about six months [before]" and concluded that the prejudice to Shefelbine by the delay would be minimal. The court stated, "I realize[] you have a right to a speedy trial, but I feel that you have a greater right to a fair trial so I've canceled the trial for today." Shefelbine indicated that he understood the situation and, when asked if he wished to put anything on the record, his attorney said no. The court rescheduled the trial for May 18.

Shefelbine now argues that the delay of trial from April 22 to May 18, 2015, should weigh against the state because, even though the state was not at fault, "[i]t is ultimately the district courts which are tasked with overseeing and controlling the administration of the jury system in each county." The state contends that the insufficient number of potential jurors constituted good cause to continue the trial.

The jury commissioner in each county is responsible for "administer[ing] the jury system under the supervision and control of the chief judge of the judicial district." Minn.

8

Gen. R. Prac. 803(a). "The responsibility for promptly bringing a case to trial rests with the state." *Hahn*, 799 N.W.2d at 30. "Negligence or overcrowded courts should be weighted less heavily [against the state than deliberate attempts at delay] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* (quotation omitted). Because obtaining sufficient jurors to ensure that a defendant receives a fair trial is ultimately the responsibility of the district court, we conclude that the delay from April 22 to May 18, 2015, weighs against the state. *Cf. Jones*, 392 N.W.2d at 235 (stating that "[t]he delay in this case appears to be the result of our overburdened judicial system" and that "[t]he reason for this delay must weigh against the state"). But because nothing in the record suggests the delay was deliberate, the delay weighs only slightly against the state. *Cf. id.* ("The responsibility for an overburdened judicial system cannot, after all, rest with the defendant. The reason for the delay here, however, weighs less heavily against the government than, for example, a deliberate attempt on the part of a prosecuting attorney to delay a trial.").

***Assertion of right***

As to assertion of the speedy-trial right, a "defendant's assertion of the right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *State v. Friberg*, 435 N.W.2d 509, 515 (Minn. 1989) (quotation omitted). "The circumstances surrounding the frequency and intensity of a defendant's assertion of a speedy trial demand—including the import of defense decisions to seek delays—can be weighed in the third [factor] . . . ." *State v. Windish*, 590 N.W.2d 311, 318 (Minn. 1999).

9

The state acknowledges Shefelbine's written speedy-trial demand on January 21, 2015, and his complaint about the trial delay on March 18. But the state argues that, at the April 22 hearing, Shefelbine consented to the continuance. The state argues that this factor therefore should not weigh in Shefelbine's favor because he did not maintain his speedy-trial demand "through trial." Shefelbine denies that he consented to the trial continuance from April 22 to May 18. Based on the record, which reflects Shefelbine's agreement with the continuance of trial to May 18, we conclude that Shefelbine's assertion of his speedy-trial right weighs only slightly in his favor.

*Prejudice*

Courts should consider three interests "in determining whether a defendant suffered prejudice [from delay]: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) preventing the possibility that the defense will be impaired." *Taylor*, 869 N.W.2d at 20 (quotation omitted). "A defendant does not have to affirmatively prove prejudice; rather, prejudice may be suggested by likely harm to a defendant's case." *Windish*, 590 N.W.2d at 318. Delay-occasioned harm to a defendant's case may include damage to a witness's ability to recall "essential facts," the unavailability of a witness, or impairment of representation. *Jones*, 392 N.W.2d at 235–36.

Shefelbine was in custody throughout the proceedings here because of charges in unrelated cases in Minnesota and Wisconsin, as well as the charges in this case. "If a defendant is already in custody for another offense . . . the first two interests [of preventing oppressive pretrial incarceration and minimizing the anxiety and concern of the accused] are not implicated. The only remaining question is whether the defense was likely harmed

by the delay." *Taylor*, 869 N.W.2d at 20 (citation omitted). "Typically, such prejudice is suggested by memory loss by witnesses or witness unavailability." *Id.*

Shefelbine argues that his custody status due to the other cases should not detract from the prejudice that he suffered in this case because of the trial delay. He claims that the trial delay in this case prejudiced his ability to focus on defending himself in the other cases. But Shefelbine has not demonstrated or even asserted any prejudice to his defense in this case as a result of the trial delay. And he has not demonstrated any likely harm to his defenses to the other Minnesota and Wisconsin charges against him. We therefore conclude that the lack of prejudice weighs against Shefelbine.

In sum, although the delay in this case presumptively violated Shefelbine's speedy-trial right, the reasons for the delay weigh only slightly against the state, and Shefelbine acquiesced to the delay from April 22 to May 18, 2015. Shefelbine has not demonstrated prejudice to his defense in this case or with regard to the other Minnesota and Wisconsin charges against him. We therefore conclude that Shefelbine's speedy-trial right was not violated by the delay in this case.

**Affirmed.**