Julie Ann **BURNS**, Appellant,

v.

**STATE of Minnesota, Respondent.**

No. C6–00–1089.

Court of Appeals of Minnesota.

Jan. 2, 2001.

Review Denied Feb. 21, 2001.

John M. Stuart, State Public Defender, Susan K. Maki, Assistant Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN; and David J. Hauser, Otter Tail County Attorney, Fergus Falls, MN, for respondent.

Considered and decided by LANSING, Presiding Judge, PETERSON and STONEBURNER, Judges.

## OPINION

LANSING, Judge

On appeal from an order denying her petition for postconviction relief, Julie Ann Burns argues her conviction for conspiracy to commit a controlled-substance crime in the second degree must be reversed because it was based on the uncorroborated testimony of her accomplices. Alternatively, Burns argues she is entitled to a new trial because (a) she did not knowingly and voluntarily waive her right to testify, and (b) the district court failed to ensure that the verdict was unanimous by not asking a juror to clarify his verdict of "Guilty, with a reservation." We affirm.

## FACTS

A jury convicted Julie Ann Burns of conspiracy to commit a controlled-substance offense in the second degree in violation of Minn.Stat. § 152.022, subd. 1(3) (1998). The facts supporting the jury's verdict establish that James Danzeisen and Kelly Sansburn sold 2.8 grams of methamphetamine to a police informant in March 1998. Shortly after the sale, police stopped the truck in which Danzeisen and Sansburn were riding. A search of the men and the truck yielded the "buy money," methamphetamine packaged in ziplock bags, empty ziplock bags, two gram scales, and mirrors that appeared to have been used for cutting or snorting cocaine or methampethamine.

The search also yielded some writings and a spiral notebook. The writings alluded to a woman named "Brandy" and listed her home and work telephone numbers and the price at which she could buy methamphetamine. By tracing the telephone numbers, the police were able to identify "Brandy" as appellant Julie Ann Burns.

The spiral notebook contained notes related to drug dealings involving Brandy.

One page in the spiral notebook was addressed to Brandy and indicated the prices at which she and her co-conspirators could buy one-eighth of an ounce of methamphetamine, known in the drug trade as an "eight ball." Another page in the notebook indicated that two "balls" had gone to Brandy for $275 each on an "IOU" and that a $275 balance "owed Brandy" remained.

Police obtained a warrant to search Burns's home. The search disclosed methamphetamine residue taken from drug paraphernalia, ziplock bags, a gram scale, and a ledger containing drug notes. Scott Listrom, who rented a room from Burns and was present during the search, told police Danzeisen frequently delivered methamphetamine to Burns and Kevin Bagley, a man living in Burns's home. He also told police that Bagley then sold the drug to others. Because the trial court suppressed the evidence seized from Burns's home, the state's case rested only on the testimony of Listrom and Bagley, Burns's co-conspirators, and on the evidence police found on Danzeisen and Sansburn and in their truck.

Bagley testified he had been Burns's friend for 19 years and knew her to use the name "Brandy." He stated he moved in with Burns in February 1998 and that, between January and March 1998, he saw Danzeisen deliver methamphetamine to Burns on at least four occasions. The methamphetamine was packaged in blue, green, and clear ziplock bags, each color designating a different weight. Burns gave Bagley 15 grams of the drug to sell in exchange for a fee.

Listrom testified he had been present at least eight times when Danzeisen delivered methamphetamine to Burns in her home. He stated Burns then sold the drug to him and to others. He also stated he saw other people use drugs with Burns at her home, but did not know if Burns charged those people for the drugs.

Finally, Sansburn testified that Danzeisen told him he had bought methamphetamine in the Twin Cities from a man named Bob and had given Burns some of that methamphetamine. Sansburn admitted, however, he had no personal knowledge of that exchange.

Following conviction, Burns filed a direct appeal, but the appeal was dismissed to permit Burns to seek postconviction relief. In her petition for postconviction relief, Burns claimed she had been denied the right to testify and the right to effective assistance of counsel. Burns based her ineffective-assistance-of-counsel claim on her attorney's failure to ask the trial court to clarify the verdict of a juror who, during polling, stated his verdict was guilty "with a reservation." The trial court denied Burns postconviction relief. This appeal followed.

## ISSUES

**I.** Does the record contain evidence sufficient to corroborate the testimony of Burns's co-conspirators?

**II.** Did the postconviction court abuse its discretion in finding that Burns knowingly and voluntarily waived her right to testify?

**III.** Did the trial court abuse its discretion by not taking steps sua sponte to clarify one juror's verdict of "Guilty, with a reservation"?

## ANALYSIS

### I

■ Burns first argues her conviction must be reversed because it is based on the uncorroborated testimony of her accomplices. We disagree.

■ An accused may not be convicted of a crime on the uncorroborated testimony of an accomplice. Minn.Stat. § 634.04 (1998). Evidence corroborating an accomplice's testimony must link the defendant to the crime, but it need not establish a prima facie case of guilt. *State v. Adams*, 295 N.W.2d 527, 533 (Minn.1980). Corrob-

orating evidence is sufficient if it restores confidence in the accomplice's testimony by confirming its truth and pointing to the defendant's guilt in some substantial degree. *State v. Landro*, 504 N.W.2d 741, 746 (Minn.1993). It is also sufficient if it fairly supports the inference that the defendant was connected to the crime. *State v. Ford*, 539 N.W.2d 214, 225 (Minn.1995); *Adams*, 295 N.W.2d at 533. When evaluating the sufficiency of evidence corroborating an accomplice's testimony, this court must view the corroborating evidence in the light most favorable to the state and resolve any conflicts in favor of the verdict. *State v. Norris*, 428 N.W.2d 61, 66 (Minn.1988).

A person conspires to commit a controlled-substance offense in the second degree if, on one or more occasions within a 90–day period, the person (a) joins with at least one other person to sell one or more mixtures of a total weight of 10 grams or more containing methamphetamine, and (b) does an overt act in furtherance of the crime. Minn.Stat. §§ 152.022, subd. 1(3), 609.175, subd. 2 (1998).

■ The record contains sufficient evidence to corroborate Bagley's and Listrom's testimony that Burns conspired to sell 10 grams or more of methamphetamine within a 90–day period. The evidence police found on Danzeisen and Sansburn and in their truck establishes that Danzeisen was a drug dealer and lends credibility to the testimony that he delivered methamphetamine to Burns at her home. Burns's association with Danzeisen, in turn, corroborates testimony establishing her opportunity and motive to commit the crime. Corroborating evidence includes evidence of a "defendant's association with those involved in the crime in such a way as to suggest joint participation, as well as from the defendant's opportunity and motive to commit the crime and his proximity to the place where the crime was committed." *Adams*, 295 N.W.2d at 533 (citation omitted).

Additionally, the writings and the spiral notebook police seized from Danzeisen's truck referred repeatedly to Burns by her nickname and listed her home and work telephone numbers. They also listed the prices at which Burns could buy methamphetamine and contained calculations about drug-trafficking activities involving Burns. The writings and the notebook thus restore confidence in Bagley's and Listrom's testimony that Burns was involved in drug trafficking and point to Burns's guilt in some substantial degree.

Finally, Sansburn's testimony that Danzeisen told him he had given Burns methamphetamine he bought from a man named Bob permits the inference that Burns was connected to the drug trafficking and had both opportunity and a motive. The evidence viewed in the light most favorable to the verdict thus sufficiently corroborates the testimony of Burns's accomplices.

## II

■ Burns next argues the postconviction court abused its discretion in finding that she knowingly and voluntarily waived her right to testify. The record does not support Burns's claim.

■ A criminal defendant has a constitutional right to testify on his or her behalf. *State v. Walen*, 563 N.W.2d 742, 751 (Minn.1997); *State v. Rosillo*, 281 N.W.2d 877, 878–79 (Minn.1979). The right to testify is personal. *State v. Smith*, 299 N.W.2d 504, 506 (Minn.1980). It may thus be waived only by the defendant. *Id.* Like the waiver of other constitutional rights, the waiver of the right to testify must be knowing and voluntary. *Walen*, 563 N.W.2d at 751.

■ A person seeking postconviction relief bears the burden of proving that he or she did not knowingly and voluntarily waive the right to testify. *Id.* On review, our role is limited to determining whether the record contains sufficient evi-

dence to sustain the postconviction court's findings. *See* Minn.Stat. § 590.04, subd. 3 (1998); *Gassler v. State*, 590 N.W.2d 769, 771 (Minn.1999). We will not disturb a postconviction court's decision absent an abuse of discretion. *Gassler*, 590 N.W.2d at 771.

The postconviction court did not abuse its discretion in finding that Burns knowingly and voluntarily waived her right to testify. Burns's trial counsel testified that she met with Burns before trial and told her both that she had a right to testify and that the decision whether or not to testify was Burns's. They then discussed the advantages and disadvantages of testifying. Counsel stated she told Burns that if she testified she would be impeached with a prior welfare-fraud conviction. Counsel recommended against testifying and Burns agreed.

During a recess near the end of the state's case, Burns again raised the subject of testifying. Once again, counsel told Burns she had the right to testify but advised her against it. According to counsel, Burns's subsequent statement that she did not want to testify seemed unequivocal.

Burns admitted discussing with counsel whether to testify, but she denied discussing the pros and cons of testifying. Burns stated that counsel told her she had the "option" to testify, but did not tell her that the decision whether or not to testify was her decision. Burns also stated that counsel told her twice, "You are not taking the stand."

■ On this record, the postconviction court did not abuse its discretion in finding that Burns knowingly and voluntarily waived her right to testify. In determining whether a petitioner has met his or her burden of proof, the postconviction court may credit trial counsel's testimony and discredit defendant's testimony. *Walen*, 563 N.W.2d at 751. Counsel testified she told Burns both that she had a right to testify and that the decision whether to testify was Burns's. The court credited counsel's testimony, which supports the court's finding that Burns knowingly and voluntarily waived her right to testify.

Burns argues that she did not waive her right knowingly and voluntarily because counsel did not expressly tell her that her right to testify was absolute and that she could, therefore, testify despite counsel's recommendation. But counsel communicated to Burns all the information necessary for Burns to make an informed decision about whether to testify. Burns could have inferred from counsel's statements that she could have testified despite counsel's recommendation. Nothing in counsel's explanation of the right to testify suggested otherwise. *See State v. Thomas*, 590 N.W.2d 755, 757 (Minn.1999) (holding waiver of right to testify was knowing and voluntary when defendant acknowledged on the record that his attorney had advised him of advantages and disadvantages of testifying and that it was his decision not to testify).

### III

■ After the verdict was announced, Burns's counsel asked the court to poll the jury. In response to the question, "Is this your verdict?" one of the jurors answered, "Yes, with a reservation." Burns did not object to the response or ask the court to have the juror clarify it. Nor did the court sua sponte ask for clarification. Burns claims that by not asking the juror to clarify his response, the court failed to ensure a unanimous verdict.

■ Defendants in criminal cases have a constitutional right to a unanimous verdict. *Andres v. United States*, 333 U.S. 740, 748, 68 S.Ct. 880, 884, 92 L.Ed. 1055 (1948) (holding "[u]nanimity in jury verdicts is required where the Sixth and Seventh Amendments apply"); *United States v. Morris*, 612 F.2d 483, 488–89 (10th Cir. 1979) (stating unanimity requirement applies in federal criminal cases not only by virtue of Fed.R.Crim.P. 31(a), but also by virtue of the Sixth Amendment). Polling is one means of ensuring unanimity. *Mor-*

*ris*, 612 F.2d at 489 (citation omitted). A criminal defendant's right to have the jury polled is thus a corollary to the defendant's right to a unanimous verdict. *State v. Wiese*, 162 Wis.2d 507, 469 N.W.2d 908, 911 (1991).

The purpose of jury polling is to ensure that "each of the jurors approves of the verdict as returned [and] that no one has been coerced or induced to sign a verdict to which he does not fully assent." *Hoffman v. City of St. Paul*, 187 Minn. 320, 325, 245 N.W. 373, 375 (1932) (quoting *Humphries v. District of Columbia*, 174 U.S. 190, 194, 19 S.Ct. 637, 638–39, 43 L.Ed. 944 (1899)). When confusion arises during polling on whether a particular juror approves of the verdict as returned, the trial court may question the juror to clarify the confusion. *State v. Ware*, 498 N.W.2d 454, 459 (Minn.1993) (stating trial court is given latitude in questioning jurors to clarify confusion arising from jury poll). But the court must be careful "not to coerce or appear to intimidate the juror [being questioned]." *Id.*

The decision to question a juror is discretionary and turns on the degree to which the juror's answer to the poll was reluctant, equivocal, or conditional. *See* M.J. Greene, Annotation, *Juror's Reluctant, Equivocal, or Conditional Assent to Verdict, on Polling, as Ground for Mistrial or New Trial in Criminal Case*, 25 A.L.R.3d 1149, 1153–56 (1969 & Supp. 2000). When a juror's answer unequivocally indicates that the juror disagrees with the verdict or was coerced into assenting to it, the district court must either discharge the jury or order that the jury retire for further deliberations. *See* Minn. R.Crim.P. 26.03, subd. 19(5) (listing trial court's options when poll does not conform to verdict). *See generally* Annotation, *supra* at 1153–54. In limited cases, the trial court may also question the juror further. *See Williams v. United States*, 419 F.2d 740, 744–47 (D.C.Cir.1969) (additional questioning permitted when it was apparent juror was confused about question asked during poll); *Slocum v. United States*, 325 F.2d 465, 468 (8th Cir.1963) (further polling permitted when foreman inadvertently signed both guilty and not-guilty verdict forms but drew a line through his signature on not-guilty verdict form before returning verdict).

When, on the other hand, a juror's response indicates that the juror assented to the verdict voluntarily but with reservations or a degree of reluctance, the trial court may accept the verdict as unanimous without further inquiry. *See, e.g., Johnson v. United States*, 470 A.2d 756, 759 (D.C. 1983) (juror's response of "Guilty, I guess" did not indicate uncertainty about verdict); *Parker v. State*, 81 Ga. 332, 6 S.E. 600, 601 (1888) (juror's response that he had agreed to verdict "reluctantly" was sufficient to ensure unanimous verdict—assent is sufficient even if reluctant); *Terry v. State*, 224 Ga.App. 157, 480 S.E.2d 193, 197 (1996) (juror's statement that he agreed with verdict but had "reservations" did not prevent verdict from being unanimous); *Watts v. State*, 142 Ga.App. 857, 237 S.E.2d 231, 232 (1977) (response that verdict was jurors' verdict "with question" did not render verdict defective—state was required only to remove reasonable doubt from jurors' minds, not to remove every doubt); *State v. Daniels*, 347 S.W.2d 874, 880 (Mo.1961) (in absence of motion for mistrial, response that verdict was juror's "with reservations" did not reasonably suggest that juror had not assented to verdict or that her concurrence had been involuntary). *But cf. Lattisaw v. State*, 329 Md. 339, 619 A.2d 548, 551–52 (1993) (juror's response of "Yes, with reluctance," was ambiguous and required trial judge to take corrective action).

The trial court has latitude in deciding whether further inquiry is necessary to clarify a juror's reluctant assent. *See Jackson v. United States*, 386 F.2d 641, 643 (D.C.Cir.1967). *See generally* Annotation, supra at 1151 (the proper course of action when a juror acquiesces in the

verdict but his or her response shows a degree of reservation depends largely on the trial court's discretion). In deciding whether to ask for clarification, the trial court may consider not only the exact words used by the juror, but also the surrounding circumstances, including the juror's expression and demeanor during polling. *See, e.g., People v. Superior Court*, 67 Cal.2d 929, 64 Cal.Rptr. 327, 434 P.2d 623, 625 (1967); *see also* Annotation, 25 supra at 1151–52. We adopt this court's reasoning in *State v. Greer*, No. C0–93–1374, 1994 WL 164217, at *3 (Minn. App. May 3, 1944), *review denied* (Minn. June 29, 1994), and hold that the district court may also consider the juror's voir dire testimony. The court's determination of whether a juror acquiesced in the verdict will not be disturbed absent a clear abuse of discretion. *United States v. Brooks*, 420 F.2d 1350, 1353 (D.C.Cir.1969) (stating that because unspoken factors play large role in ascertaining meaning of juror's response to poll, trial judge has discretion in evaluating juror's responses, and its "reasonable exercise of * * * discretion should be accorded proper deference by a reviewing court").

We conclude that the district court did not abuse its discretion in this case by finding that the juror acquiesced to the verdict freely and that no additional inquiry was necessary. The juror's voir dire testimony, counsel's postconviction testimony, and the district court's own observations of the juror's demeanor during polling support the postconviction court's determination that the juror's response was not sufficiently uncertain to require additional polling.

Voir dire testimony established that the juror did not trust informants. When asked about the use of informants in criminal investigations, the juror stated, "Well. * * * Nobody likes a tattletale." When asked if he would prejudge an informant's testimony, the juror replied, "[W]hen you put a rat in a corner, it's going to have to do something." The juror further stated he would question the reliability of an informant's testimony because "[informants are] trying to weasel out of something themselves." The district court could reasonably interpret the juror's response in light of his testimony on voir dire to mean "Yes, I agree with the verdict even though I distrust informants." The district court did not, therefore, abuse its discretion in not asking the juror sua sponte to clarify his response.

■■■■ Even when considered independently of the juror's testimony on voir dire, the answer "Yes, with a reservation" does not reasonably suggest the juror disapproved of the verdict or was coerced into signing it. The initial "yes" shows the juror's concurrence in the verdict. *See People v. Epps*, 197 Ill.App.3d 376, 143 Ill.Dec. 702, 554 N.E.2d 637, 641 (1990) (concluding the response "Yes" was unambiguous and, when weighed against ambiguity created by juror's emotion in announcing her verdict, tilted scales of justice in favor of a finding that her verdict was voluntary). The qualification that follows does not necessarily imply disagreement or coercion. It suggests merely that the juror agreed with the verdict but with a reservation. Reservations are not unusual in reaching verdicts in criminal cases and should not be held to nullify an initial concurrence. The law requires only the absence of reasonable doubt, not the absence of all doubt. *Watts*, 237 S.E.2d at 232. Trial counsel's testimony and the court's own observation that the juror sounded firm and did not appear to be under coercion when he announced his verdict support the postconviction court's finding that the juror acquiesced in the verdict freely.

Considering the juror's response and Burns's failure to object to it or ask for clarification, the trial court was within the bounds of its discretion in concluding that the juror's response did not compromise the unanimity of the verdict and in not questioning the juror further.

## DECISION

Because the testimony of Burns's accomplices was corroborated by other evidence, Burns knowingly and voluntarily waived her right to testify, and the jury verdict was unanimous, we affirm the district court's denial of postconviction relief.

**Affirmed.**