*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0522**

State of Minnesota,
Respondent,

vs.

Derrick Lee Riddle,
Appellant.

**Filed March 7, 2016
Affirmed in part, reversed in part, and remanded
Peterson, Judge**

Hennepin County District Court
File No. 27-CR-14-15348

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Peterson, Judge; and Klaphake, Judge.*

───────────────

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**PETERSON**, Judge

In this appeal from his convictions of and sentences for violating an order for protection (OFP) and terroristic threats, appellant argues that (1) the district court erred by permitting a police witness to give her opinion that he violated the OFP; (2) his constitutional right to a speedy trial was violated; and (3) the district court erred by sentencing him on both convictions. In a pro se supplemental brief, appellant alleges additional trial errors that deprived him of his right to a fair trial. We affirm appellant's convictions, but reverse his sentence and remand to the district court for resentencing.

## FACTS

Z.F. met appellant Derrick Lee Riddle in May 2012, and they became involved in a romantic relationship. Z.F. and Riddle got along well during the first year of their relationship, but eventually Riddle became physically abusive. When Z.F. sought to terminate their relationship, Riddle told her that she owed him $30,000 because he had foregone a job in order to assist her. Z.F. got a job and went back to school, and she turned over all of her earnings to Riddle to reimburse him. Riddle required her to have her instructors sign a permission slip to demonstrate that she was attending classes. He became suspicious of one signature and told Z.F. he would personally contact that instructor. Z.F. explained the situation to the instructor, who took her to get an OFP.

Z.F. filled out the paperwork for an OFP on Friday, November 22, 2013, but the order could not be served until Monday, November 25. On Monday, both Z.F. and Riddle were at her apartment when sheriff's deputies served him with the OFP. Riddle left the

apartment, and within 20 minutes, Z.F. received four voicemails from him. Z.F. recognized Riddle's phone number on her caller identification. One of the voicemails was, "You stupid b----h. You need to leave Minnesota as quickly as possible. I knew you was a worthless piece of s--t to deal with anyway." In another message, Riddle stated that he would have his "crackhead" friends break into Z.F.'s apartment, rape her, and kill her child.

Z.F. left the apartment and went to a shelter in Plymouth. She turned off her phone for several hours, and when she turned it back on, she had 21 more voicemails from Riddle. One of the counselors at the shelter listened to the voicemails and directed Z.F. to file a police report. Plymouth Police Officer Amy Therkelsen listened to the voice mails and attempted to call Riddle's number and another number associated with the threats, but no one answered the phone.

Z.F. received a number of unsigned letters she recognized as from Riddle because of the handwriting and references to their relationship. Z.F. also received e-mails from an address that she recognized as Riddle's e-mail account. Z.F. was frightened for herself and for her child.

Plymouth Detective Molly Lynch investigated the incidents. Phone records showed 42 calls from the number Z.F. associated with Riddle but did not identify the phone's owner because it was a prepaid phone. She also examined 17 e-mails from the e-mail address Z.F. identified as Riddle's. At trial, Lynch described the letters that Z.F. received, as "rambling" and "[t]hreatening in nature." She read some of the letters to the jury. In response to a question, Lynch testified that Riddle's conduct violated the OFP.

3

Riddle, who was represented by a public defender, fired his attorney after jury selection and represented himself, with the public defender appointed as advisory counsel. Riddle did not testify. He wanted to recall Therkelsen after the state rested, but the court did not permit it. He also said that a witness he intended to call must have left the courthouse, and he asked to make a phone call to the witness "on the record." The district court refused to permit this. Riddle made an offer of proof of the witness's anticipated testimony: she would testify that women in homeless shelters sometimes seek OFPs in order to obtain housing. The district court ruled that this testimony was irrelevant.

Riddle objected to the jury instruction requiring a unanimous verdict; he did not want the district court to instruct the jurors that their verdict must be unanimous. The district court gave the standard unanimity instruction. During deliberations, the jury submitted one question to the court, asking if the date range should be the same for both charges.[1] The jurors did not indicate that they were having difficulty reaching a verdict. The jury found Riddle guilty of both charges, and the district court imposed a 30-month sentence for each offense, to be served concurrently.

## DECISION

### I.

Riddle argues that the district court erred by sentencing him for both offenses, because the offenses arose out of the same behavioral incident and were motivated by a

---

[1] The jury instruction for the OFP-violation charge referred to conduct "on or between November 25, 2013 and January 20, 2014." The jury instruction for the terroristic-threats charge referred to an act "on or about November 25, 2013."

4

single criminal objective. The state agrees that Riddle should have been sentenced for only one offense.

"[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses . . . ." Minn. Stat. § 609.035, subd. 1 (2012). Thus, if two or more offenses are committed as part of a single behavioral incident, a defendant may be sentenced for only one offense. *State v. Rivers*, 787 N.W.2d 206, 213 (Minn. App. 2010), *review denied* (Minn. Oct. 19, 2010).

For the OFP-violation charge, the jury was instructed to determine whether Z.F. received a call or calls from Riddle and/or received electronic communications or communications made through any available technology "on or between November 25, 2013 and January 20, 2014." For the terroristic-threats charge, the jury was instructed to determine whether Riddle threatened to commit a crime of violence and whether the threat "took place on or about November 25, 2013." Because a threat communicated by Riddle to Z.F. on November 25, 2013, could constitute both offenses, and the jury was not instructed to identify which communication violated the OFP, we cannot conclude that the two offenses did not arise out of a single behavioral incident on November 25, 2013. We therefore reverse Riddle's sentence and remand to the district court for resentencing on one of the offenses.

**II.**

Riddle argues that the district court plainly erred by permitting Lynch to give her opinion as to whether his conduct constituted an OFP violation. Riddle did not object to Lynch's testimony; therefore, this court will review under the plain-error rule. *See State v.*

*Sontoya*, 788 N.W.2d 868, 872 (Minn. 2010). The defendant has the burden of demonstrating (1) error (2) that was plain, and (3) that affected his substantial rights. *Id.* If those three prongs are shown, this court will determine whether it is necessary to address the error in order to ensure the fairness and integrity of the judicial proceedings. *Id.* An error is plain if it is "clear" or "obvious," which is usually shown if the error violates caselaw, a rule, or a standard of conduct. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006).

A lay witness may offer opinion testimony when it is "rationally based on the perception of the witness and . . . helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Minn. R. Evid. 701. "[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify [about specialized knowledge] in the form of an opinion or otherwise." Minn. R. Evid. 702. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Minn. R. Evid. 704.

A witness qualifies as an expert through "knowledge, skill, experience, training, or education." Minn. R. Evid. 702. Lynch testified that she had been a police officer for 20 years, she was currently assigned to do follow-up investigations of matters submitted by patrol officers, and generally the cases involved "sexual assaults, domestic assaults, order for protection violations, harassing communications, death investigations, things like that." Lynch did not testify that she had special training, knowledge, or education in these areas. *See State v. Valentine*, 787 N.W.2d 630, 639 (Minn. App. 2010) (stating that police officer

6

qualified as an expert witness in battered-woman syndrome by virtue of law-enforcement experience, role as a probation officer, training in domestic-violence issues, and education), *review denied* (Minn. Nov. 16, 2010). Most of Lynch's testimony concerned her investigation of Z.F.'s complaint. At the conclusion of her direct testimony, the prosecutor asked Lynch if she drew any conclusions about Riddle's contacts with Z.F. Lynch replied, "Yes. It appeared the phone records, the e-mails, and the letters showed that . . . the signed order for protection was violated."

The district court has discretion to determine whether a police officer is testifying as an expert or as a lay witness. *State v. Ards*, 816 N.W.2d 679, 682-83 (Minn. App. 2012). Despite specialized training and experience, a police officer is not necessarily an expert. *Id.* at 683. In *Ards*, this court determined that a police officer who testified about indicia of alcohol consumption was not an expert in alcohol impairment; rather, the officer, when testifying about her observations of the defendant, was testifying as a lay witness and could offer her opinion that the defendant drove while impaired. *Id.* at 684. Similarly, Lynch's testimony was primarily about her investigation of Riddle's communications with Z.F. She needed no specialized knowledge to offer an opinion that the contacts with Z.F. violated the OFP. The district court did not plainly err by permitting Lynch to testify that these contacts violated the OFP.

## III.

Riddle argues that his constitutional right to a speedy trial was violated when his trial was scheduled more than four months after his original demand. Both the United States Constitution and the Minnesota Constitution guarantee a defendant the right to a

speedy trial. U.S. Const. amend. VI; Minn. Const. art. I, § 6. And court rules provide that "[a] defendant must be tried as soon as possible after entry of a plea other than guilty. On demand of any party the trial must start within 60 days of the demand unless the court finds good cause for a later trial date." Minn. R. Crim. P. 11.09(b) (2014).

A speedy-trial challenge is a constitutional issue subject to de novo review. *State v. Johnson*, 811 N.W.2d 136, 144 (Minn. App. 2012), *review denied* (Minn. Mar. 28, 2012). Courts consider four factors when determining whether a defendant has been deprived of the right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. *State v. Hahn*, 799 N.W.2d 25, 30 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011).

The first factor, the length of the delay, is a "triggering mechanism"; a delay beyond 60 days after a speedy-trial demand is presumptively prejudicial and the other factors must then be considered. *State v. Jones*, 392 N.W.2d 224, 235 (Minn. 1986); *Hahn*, 799 N.W.2d at 30. "The delay in speedy-trial cases is calculated from the point at which the sixth amendment right attaches: when a formal indictment or information is issued against a person or when a person is arrested and held to answer a criminal charge." *Jones*, 392 N.W.2d at 235. On June 2, 2014, Riddle was charged by complaint with violating an OFP. At his first appearance on September 2, 2014, Riddle stated, "I request my constitutional right to set a 60 day speedy trial as of today if I have to stay in custody." Riddle's trial was held on January 12-15, 2015, more than 60 days after his initial demand. This triggers consideration of the other factors. *Id.*

The record does not clearly demonstrate the reason for the delay. Following a September 29, 2014 omnibus hearing/scheduling conference, the district court issued an order setting a January 12, 2015 trial date. On January 2, 2015, Riddle was in custody because he failed to get a mental-health examination, which was a condition of his bond. Riddle made another speedy-trial demand, and the trial began as scheduled on January 12.

"A defendant's assertion of the right to a speedy trial need not be formal or technical, and it is determined by the circumstances." *Hahn*, 799 N.W.2d at 32. But a court may consider "the frequency and force of the speedy-trial demand because the strength of the demand is likely to reflect the seriousness and extent of the prejudice." *Id.* (quotation omitted). Riddle's first demand was at least partially premised on whether he would have to remain in custody, and he was released on a conditional bond; the record does not indicate that he renewed the demand at the omnibus hearing/scheduling conference when the January 12 trial date was set; and trial began ten days after he again demanded a speedy trial on January 2. Riddle's assertion of his speedy-trial right was mixed.

Finally, Riddle has not shown any prejudice to his rights. Generally, prejudice to a defendant's interests occurs when (1) there is oppressive pretrial incarceration; (2) the accused is subject to anxiety and concern; or (3) his defense is impaired through loss of memory or inability to produce witnesses. *Id.* at 33; *see also Jones*, 392 N.W.2d at 235-36 (stating that no unfair prejudice was apparent when there was no evidence that witnesses were unavailable or unable to recall essential facts). "The third interest, possible impairment of a defendant's defense, is the most important." *Hahn*, 799 N.W.2d at 33. Riddle was free on bond until he violated the conditions of the bond; nothing in the record

9

shows that Riddle was subject to anxiety or concern; and Riddle has not demonstrated that his defense was impaired by the relatively short delay.

Based on the lack of prejudice, the relatively short delay, Riddle's apparent acquiescence to the trial date, and the equivocal nature of Riddle's speedy-trial demand, we conclude that he was not deprived of his speedy-trial right.

**IV.**

Riddle raised several issues in his pro se supplemental brief: (1) he was denied the right to call witnesses on his behalf; (2) he was denied his speedy-trial right; (3) he was denied his right to an impartial jury because two of the jurors were acquainted with either his counsel or the prosecutor; (4) the prosecutor committed misconduct; (5) his appointed lawyer was ineffective and had a conflict of interest; and (6) the jury was improperly instructed that its verdict must be unanimous and was not told that it could fail to reach a verdict.

(1) A defendant has the right to compel a witness's attendance at trial and "the right to put before a jury evidence that might influence the determination of guilt." *Burrell v. State*, 858 N.W.2d 779, 786 (Minn. 2015) (quotation omitted). But "the constitutional protection of compulsory process is not an absolute guarantee that every witness a defendant seeks must testify." *Id.* "[A] defendant must at least make some plausible showing of how the testimony would have been both material and favorable to his defense." *Id.* (quotation omitted).

A witness who Riddle intended to call was not in the courtroom. Riddle told the court that his witness agreed to testify but that she may have been confused when the trial

10

was delayed. As an offer of proof, Riddle told the court that the witness would testify that women in homeless shelters often took out OFPs in order to receive housing. The district court ruled that the evidence was irrelevant to the charged offenses. We agree. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. Evidence that other women have obtained OFPs for an improper purpose has no tendency to show that it is more probable or less probable that Z.F. improperly obtained the OFP that Riddle was accused of violating.

(2) Riddle's speedy-trial argument has been addressed.

(3) One juror said during voir dire that he recognized Riddle's attorney as someone he played youth basketball with, but he had no contact with him since high school. The juror said that this remote relationship would not affect him. A second juror said that he recognized the prosecutor because she came to a coffee shop where he worked when she was in law school. He did not immediately recognize her, but he had conversations with her during that time. He said that this limited contact would not affect his ability to serve as a juror.

Riddle alleges "implied bias." "Implied bias is a bias that is conclusively presumed as a matter of law" and "assumes that certain relationships or experiences create a mindset that cannot be changed or set aside." *State v. Fraga*, 864 N.W.2d 615, 621 (Minn. 2015) (quotations omitted). Minn. R. Crim. P. 26.02, subd. 5(1), sets forth the grounds for challenges for cause, which are premised on an assumption of bias. *See also State v. Alladin*, 408 N.W.2d 642, 649 (Minn. App,. 1987) ("Minn. R. Crim. P. 26.02, subd. 5,

11

provides the exclusive grounds upon which jurors can be challenged for implied bias."),

*review denied* (Minn. Aug. 12, 1987). A juror is biased if "[t]he juror's state of mind – in reference to the case or to either party – satisfies the court that the juror cannot try the case impartially and without prejudice to the substantial rights of the challenging party." Minn. R. Crim. P. 26.02, subd. 5(1)(1). Neither of the remote relationships described by the two jurors satisfies this ground for a challenge for cause; therefore, the district court did not err in discounting them and seating the jurors.

(4) Riddle alleges prosecutorial misconduct in the seating of the juror who recognized the prosecutor. We have rejected the claim that the juror was not properly seated. Riddle denies writing the e-mails and letters that were submitted into evidence and alleges that the prosecutor knowingly submitted false evidence. The e-mails and letters were authenticated by Z.F. *See* Minn. R. Evid. 901(b)(2) (permitting authentication of handwriting by nonexpert "based upon familiarity not acquired for purposes of the litigation"). The fact that Riddle denies that he wrote them raises an issue of credibility for resolution by the jury, it does not establish prosecutorial misconduct. *See State v. Pendleton*, 759 N.W.2d 900, 909 (Minn. 2009) (stating that "[a]ssessing witness credibility and the weight given to witness testimony is exclusively the province of the jury").

(5) Riddle alleges that his attorney, whom he fired before trial, was ineffective, and that the attorney colluded with the prosecutor and the court because they all work for the state. To demonstrate an ineffective-assistance-of-counsel claim, a defendant must show "that (1) his counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that the outcome would have been different but for

12

counsel's errors." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013). Riddle's attorney participated in voir dire but then sat as advisory counsel[2] through the rest of the trial. Riddle argues that his counsel failed to object to the admission of the letters and e-mails, but Riddle was representing himself when the letters and e-mails were admitted. Counsel's performance during voir dire was reasonable and thorough.

Riddle's allegation that his attorney colluded with the prosecutor and the court because they all work for the state is based on a misunderstanding of the public-defender system. *See Lakin v. State*, 406 N.W.2d 616, 619 (Minn. App. 1987) (noting that "public defender is hired and operates independently under the direction of the State Board of Public Defense" and "defenders are fully independent and not subject to control of the judiciary before whom they appear").

(6) Riddle argues that the district court misled the jurors by instructing them that their verdict must be unanimous. Riddle objected to this instruction and proposed an instruction that specifically stated that jurors could disagree about the verdict. In a criminal case, a jury's guilty verdict must be unanimous. Minn. R. Crim. P. 26.01, subd. 1(5). This is a constitutional right. *See Burns v. State*, 621 N.W.2d 55, 61 (Minn. App. 2001) (stating that criminal defendants have a constitutional right to a unanimous verdict based on the Sixth and Seventh Amendments), *review denied* (Minn. Feb. 21, 2001). But a court may not coerce a jury into reaching a unanimous verdict or allow a jury to believe that deadlock

---

[2] Minn. Stat. § 611.26, subd. 6 (2014), states: "The district public defender must not serve as advisory counsel or standby counsel." Riddle does not allege any error with respect to counsel sitting as advisory counsel.

is not a possible outcome to their deliberations. *State v. Jones*, 556 N.W.2d 903, 910-11 (Minn. 1996). The district court used the standard jury instruction. 10 *Minnesota Practice*, CRIMJIG 3.04 (2006). The jury was instructed that its verdict must be unanimous, but the instructions included the following language: "You should not hesitate to reexamine your views and change your opinion if you become convinced they are erroneous, but you should not surrender your honest opinion simply because other jurors disagree or merely want to reach a verdict." This language was sufficient to inform jurors that they were allowed to disagree with other jurors.

We therefore affirm Riddle's convictions, but reverse his sentence and remand for resentencing consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**