NOT DESIGNATED FOR PUBLICATION

No. 126,237

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH W. MILLS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Submitted without oral argument. Opinion filed July 12, 2024. Affirmed.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: After a jury convicted Kenneth W. Mills of aggravated criminal sodomy, he raises a variety of procedural challenges to how the district court managed the jurors who convicted him. We find Mills has only preserved one of his claims, which is unpersuasive. We therefore affirm his conviction.

FACTUAL AND PROCEDURAL BACKGROUND

Given the issues Mills raises on appeal, the facts underlying his conviction are largely immaterial. Suffice it to say, Mills was charged with several sex offenses, which were set for a jury trial. After jury selection, 14 jurors were called by name and sworn in to serve, leaving 12 jurors and 2 alternates. After the jurors were sworn in, the district court asked the clerk who the alternates were. Mills' trial counsel objected to this disclosure because he believed the "best practice is to not disclose who the alternates are." He worried revealing the alternate juror identities would "make them less likely to pay attention during the course of the trial." The district court overruled Mills' objection and noted jurors "are furious if they don't know" who the alternates are.

After the clerk revealed the names of the two alternate jurors, the district court delivered the following admonition:

> "I want you to understand that Division 2 is called the snake-bit division. Things always seem to go wrong. It's very important for me to have alternates. I have lost jurors within ten minutes of a case getting started. I cannot emphasize to you enough how important your role is in serving on this jury because things do happen and we need you, and you both need to take the attitude that you actually are going to be deciding this case back in the jury room after the full presentation of the evidence and listen just as closely to the evidence and be ready to participate. Thank you very much."

The case proceeded to trial, with each side calling several witnesses. Mills also testified in his own defense.

After closing arguments, the jury panel began deliberations on Wednesday, August 3, 2022, at 4:20 p.m. and recessed at 5:00 p.m. When the parties reappeared in the district court judges' chambers the following morning, Thursday, August 4, at 11:26 a.m., the district court stated it received a "flurry of bad news." The district court had excused

one of the alternate jurors because she had tested positive for COVID-19 that morning. It also dismissed an original juror whose house had caught on fire, replacing that juror with the one remaining alternate.

In the morning of Friday, August 5, the district court, for the first time in the courtroom, addressed the fact that an alternate juror had joined deliberations. The court asked the presiding juror if the jury deliberated for about 45 minutes on Wednesday. The presiding juror agreed. The district court then spoke at length with the presiding juror and the alternate juror who replaced an original juror. It ensured the jury began deliberations anew when the alternate juror joined. According to the presiding juror, the deliberations "started from scratch" because the jury "hadn't gone into a lot of detail." During the 45 minutes of deliberations on Wednesday, the jury did nothing more "than simply determin[e] who should be the presiding juror" and how the jury was "going to go forward." The court turned its attention to the juror who substituted for an original juror. The court confirmed with the alternate that the alternate was not "left out of the deliberation process" or felt "that something had already been decided that [the alternate] w[as] not a part of."

During the deliberation process, the jury panel made several requests to review the evidence and testimony presented during trial. Eventually, after noon on Friday, August 5, 2022, the jury returned a verdict. The jury found Mills guilty of one count of aggravated criminal sodomy, not guilty of one count of aggravated criminal sodomy, not guilty of one count of aggravated indecent liberties with a child, and was unable to reach a unanimous verdict on one count of rape. After the jury's verdict was read, the district court asked the parties if they would like to have the jury polled individually. Defense counsel responded that it did, so the district court asked each juror separately whether their individual verdicts were the same as the jury verdict previously read in court. Each juror affirmatively responded, "[Y]es." One juror had the following exchange with the district court:

"THE COURT: [Juror], is this your verdict?

"[JUROR]: I'm sorry. I don't understand.

"THE COURT: Do you agree that the verdict was reached by all of the jurors and you were part of that agreement?

"[JUROR]: Yes."

After the polling of the jury was completed, the district court delivered final instructions to the jurors and discharged them from their service.

Mills appeals his conviction.

## REVIEW OF MILLS' APPELLATE CHALLENGES

*Did the district court err in disclosing to the jury who among them were alternates before the presentation of evidence?*

Mills argues the district court erred when it disclosed to the jury which individuals were alternates. While he acknowledges the district court violated no Kansas law, he contends "the district court violated the spirit of Kansas' alternate juror statute."

Mills preserved this argument for appeal because his attorney objected when the district court asked the clerk to disclose the names. The attorney told the court if the alternates knew of the surrogate nature of their role, then they would be "less likely to pay attention during the course of the trial." The district court ultimately overruled Mills' objection and immediately informed the two jurors of their alternative status.

A. *Standard of review*

A judge has "broad discretion in controlling courtroom proceedings." *State v. Rochelle*, 297 Kan. 32, 36, 298 P.3d 293 (2013). Their managerial decisions are consequently reviewed for abuse of discretion. A challenge to a district court's

4

administration of alternate jurors should be reviewed for abuse of discretion. See *State v. Hilt*, 299 Kan. 176, 186, 322 P.3d 367 (2014) (reviewing a district court's decision to discharge a juror and substitute an alternate juror for abuse of discretion).

Appellate courts recognize three ways a district court can abuse its discretion. First, discretion is abused if the result reached is "arbitrary, fanciful, or unreasonable." *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). That is, no reasonable person would have come to the same conclusion if presented with the same record evidence. Next, a district court abuses its discretion if it disregards or improperly applies controlling legal standards. *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006). Last, discretion is abused if substantial competent evidence does not support a factual finding on which the exercise of discretion or a legal conclusion in the decision is based. *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

That said, Mills' argument requires that we also review K.S.A. 22-3412(c), the statute which addresses the selection and treatment of alternate jurors. Our interpretation of that statute involves a legal question over which we exercise de novo review. *State v. Davey*, 306 Kan. 814, 820, 397 P.3d 1190 (2017).

Mills and the State agree we should review the district court's decision for an abuse of discretion but review K.S.A. 22-3412 de novo.

B. *K.S.A. 22-3412(c) does not address Mills' concerns.*

Mills roots his argument in K.S.A. 22-3412(c). This statute addresses the selection and treatment of alternate jurors:

> "'(c) A trial judge may empanel one or more alternate or additional jurors whenever, in the judge's discretion, the judge believes it advisable to have such jurors

5

available to replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable to perform their duties. Such jurors shall be selected in the same manner, have the same qualifications, and be subject to the same examination and challenges and take the same oath and have the same functions, powers and privileges as the regular jurors. Such jurors may be selected at the same time as the regular jurors or after the jury has been empaneled and sworn, in the judge's discretion. Each party shall be entitled to one peremptory challenge to such alternate jurors. Such alternate jurors shall be seated near the other jurors, with equal power and facilities for seeing and hearing the proceedings in the case, and they must attend at all times upon the trial of the cause in company with the other jurors. They shall obey the orders of and be bound by the admonition of the court upon each adjournment, but if the regular jurors are ordered to be kept in custody during the trial of the cause, such alternate jurors also shall be kept in confinement with the other jurors. Upon final submission of the case to the jury, the alternate jurors may be discharged or they may be retained separately and not discharged until the final decision of the jury. If the alternate jurors are not discharged on final submission of the case and if any regular juror shall be discharged from jury service in any such action prior to the jury reaching its verdict, the court shall draw the name of an alternate juror who shall replace the juror so discharged and be subject to the same rules and regulations as though such juror had been selected as one of the original jurors." K.S.A. 22-3412.

Mills argues this statute requires regular and alternate jurors to be treated alike. He contends the statute mandates regular and alternate jurors have an equal opportunity to observe trial, should both be kept in custody if so required, and most importantly, both hold "'the same functions, powers and privileges as regular jurors.'" But as Mills concedes, the statute "does not dictate or address the specific controversy at issue here."

Indeed, K.S.A. 22-3412(c) notes: "A trial judge *may* empanel one or more alternate or additional jurors, whenever, in the judge's discretion, the judge believes it advisable to have such jurors available." (Emphasis added.) This statute empowers district courts with the discretion to manage alternative jurors or as the State puts it:

6

"K.S.A. 22-3412 leaves the procedures for selecting and designating alternate jurors to the sound discretion of the trial court."

Although the statute largely requires the district court to treat alternative jurors equally, it does not order the court to empanel alternate jurors, nor does it demand the court refrain from informing the two types of jurors of their distinction. K.S.A. 22-3412(c). Along with the discretion given to district courts to control alternate juror procedures, nowhere in the statutory text does it demand district courts refrain from revealing the identities of alternate jurors. Since the language of K.S.A. 22-3412(c) clearly and unambiguously does not command the district court to ensure alternate jurors' identities remain anonymous, we find the statute does not help Mills.

Even though the statutory text is void of Mills' desired language, he still attempts to wield the statute's language to his benefit. Mills quotes K.S.A. 22-3412(c) and then notes his "trial judge destroyed any chance of 'appearing as though such juror had been selected as one of the original jurors' when it singled out the alternate jurors prior to the presentation of any evidence." But Mills' reliance on this quote and utilization of it, is misplaced. The statutory text does not state "appearing."  Instead, it states that if any regular juror is discharged from serving, "the court shall draw the name of an alternate juror who shall replace the juror so discharged and be subject to the same rules and regulations as though such juror had been selected as one of the original jurors." K.S.A. 22-3412(c). This statutory text does nothing more than explain that alternate jurors have the same rules and regulations as regular jurors *if* they become a regular juror. The text does not state these two types of jurors shall be treated identically nor does it require district courts to make an alternate juror "appear" as though they are a regular juror.

C. *Mills provides no legal authority to support his position.*

Although Mills acknowledges his argument is unfounded in statute, he urges us to hold that Kansas courts "should employ" a policy not to disclose the identity of alternate jurors. To cure the deficiency of on-point Kansas authority, Mills contends Massachusetts Model Jury Instruction 2.420 offers an insightful rule that Kansas courts should adopt. This jury instruction, entitled "Reducing and Sending out the Jury," states Massachusetts "impanel[s] a jury at the beginning of a trial," and "reduce[s]" the jury from seven jurors to six jurors because one juror is named an alternate. The alternate juror is selected when the clerk draws one of the seven juror names at random. Massachusetts' practice of selecting alternate jurors seems logical.

As Mills' attorneys suggested below and on appeal, the practice of informing alternate jurors of their status only after the presentation of evidence is complete encourages all jurors to fully pay attention at trial. But while this practice is logical, it is not mandated in Kansas or even in Massachusetts. See *Commonwealth v. Quinn*, 439 Mass. 492, 500 n.14, 789 N.E.2d 138 (2003) (Massachusetts' model jury instructions "are not, however, binding law."). As the State notes, although it might be best practice to inform alternate jurors of their status only after evidence is presented, "Kansas law leaves this concern solely to the sound discretion of the trial court."

Mills provides no other authority to support his argument. Most importantly, Mills does not mention any Kansas law which orders the district court to refrain from informing the jury who the alternates are until the end of trial. Since there are no legal standards commanding district courts to withhold alternate juror identities, the district court here did not commit an error. Mills has provided no persuasive reason to reverse his conviction on this basis.

8

*We find Mills' claim, that the district court abused its discretion by failing to ensure unanimity of the verdict when it polled the jury, is not preserved.*

After the district court received the verdicts from the foreperson and read it aloud, Mills requested that the jury be polled. The district court asked one of the jurors, "[I]s this your verdict?" The juror responded, "I'm sorry. I don't understand." The district court responded with a follow-up question asking, "Do you agree that the verdict was reached by all of the jurors and you were part of that agreement?" To which the juror responded, "Yes."

Mills contends the judge failed to appropriately answer the juror's question. He believes, consequently, the district court failed to properly ensure the jury's verdict was unanimous.

Below, Mills did not object to the district court's response. And on appeal, he recognizes he is generally precluded from raising his issue with the district court's response for the first time under K.S.A. 60-404. Still, he maintains we should excuse his failure to object because his case merits exceptional circumstances.

Although K.S.A. 60-404 largely bars appellate litigants from asserting arguments for the first time on appeal, there are limited exceptions. A new legal theory can be asserted for the first time on appeal if, among other options, "consideration of the theory is necessary to serve the ends of justice or prevent denial of fundamental rights." *State v. Schroeder*, 279 Kan. 104, 116, 105 P.3d 1237 (2005). Mills argues we must address the merits of this issue to prevent the denial of his fundamental right to a unanimous jury verdict.

But Mills fails to mention *State v. Cheffen*, 297 Kan. 689, 695-96, 303 P.3d 1261 (2013), a dispositive case on preserving an objection to improper polling of a jury. In

9

*Cheffen*, the defendant argued, for the first time on appeal, the district court erred in how it polled the jury. Despite failing to object below, Cheffen argued the Kansas Supreme Court could hear his claim because it "involve[d] the fundamental right to a unanimous jury verdict." 297 Kan. at 696.

The court rejected this argument. It not only recognized a contemporaneous objection or posttrial motion must be made to preserve the argument for appeal, it also held that defendants do not have a constitutional right to a unanimous jury verdict, only a statutory right. 297 Kan. at 697; but see *Ramos v. Louisiana*, 590 U.S. 83, 93, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020) ("So if the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court, it requires no less in state court."). And similarly, it found "request[ing] a jury poll of individual jurors is not [a] constitutional" right. *Cheffen*, 297 Kan. at 697. The Kansas Supreme Court, consequently, found Cheffen's polling claim unpreserved because the "fundamental right" exception, is inapplicable. 297 Kan. at 697. Mills' argument is the same argument the Kansas Supreme Court rejected in *Cheffen*.

As the State candidly notes, after *Cheffen*, the United States Supreme Court recognized defendants possess a constitutional right to a unanimous verdict in state criminal proceedings. *Ramos*, 590 U.S. at 93; see also *State v. Spackman*, No. 122,021, 2021 WL 4929156, at *4 (Kan. App. 2021) (unpublished opinion) ("[W]e presume there is a right to unanimous jury verdicts in criminal cases grounded in § 10 of the Kansas Constitution Bill of Rights and, perhaps, in § 5.") Given *Ramos*, defendants do have a federal constitutional right (if not also a State constitutional right) to a unanimous jury verdict, in state court. Thus, *Ramos* abrogates *Cheffen*'s holding that defendants only possess a statutory right to a unanimous jury verdict and not a constitutional right.

Whether Mills is entitled to a constitutional right to a unanimous jury verdict is irrelevant, however, because the Kansas Supreme Court dictates defendants do not have a

constitutional right to poll a jury. *Cheffen,* 297 Kan. at 697; see generally *State v. Charles*, No. 120,832, 2020 WL 1897329, at *4 (Kan. App. 2020) (unpublished opinion) (a recent Kansas Court of Appeals case denying a nearly identical claim to Mills' under *Cheffen*'s preservation holding). The *Cheffen* court clarified that although the right to a unanimous jury verdict and the right to poll a jury are "similar[]," it made it a point to list these two rights distinctly. 297 Kan. at 697. Polling a jury might be one mechanism to check unanimity of a verdict. But despite this, the purpose of a statutory right to poll a jury is distinct from the constitutional right to a unanimous verdict.

The *Ramos* court pointed to William Blackstone's Commentaries on the Laws of England to determine the purpose of a unanimous verdict. Blackstone stated: "[N]o person could be found guilty of a serious crime unless 'the truth of every accusation . . . should . . . be confirmed by the unanimous suffrage of twelve of his equals and neighbors, indifferently chosen, and superior to all suspicion.'" 590 U.S. at 90. At its core, the goal of a unanimous verdict is to ensure accusations are confirmed by the accused's peers who all agree. The purpose of polling a jury is different; its aim "is to ensure that 'each of the jurors approves of the verdict as returned [and] that no one has been coerced or induced to sign a verdict to which he does not fully assent.'" *Burns v. State*, 621 N.W.2d 55, 62 (Minn. Ct. App. 2001) (quoting *Hoffman v. City of St. Paul*, 187 Minn. 320, 325, 245 N.W. 373 [1932]). Although both rights guarantee the jurors agree to the verdict, the right to a unanimous verdict ensures accusations are confirmed in accord, and the right to poll a jury verifies the jurors are not coerced into their individual decisions.

Thus, even if Mills has a constitutional right to a unanimous verdict under *Ramos*, that does not necessarily mean he has a fundamental right to poll the jury. Since Mills did not lodge a contemporaneous objection below or file a posttrial motion, his claim is unpreserved for our review.

*We find Mills' remaining three claims concerning alternate jurors are also unpreserved.*

Mills claims that the district court committed reversible error when it failed to swear in the alternate jurors, failed to admonish the alternate jurors on a single occasion, and failed to instruct the jury to begin deliberations anew when an alternate juror joined deliberations after substituting for an original juror. Mills acknowledges he did not raise any of these remaining issues below. He asserts that although he is generally barred from arguing these claims for the first time on appeal, he believes we must consider these claims to "prevent the denial of fundamental rights." The preservation of these three claims, or lack thereof, are addressed in turn below.

First, Mills failed to preserve his argument the district court erred in failing to swear in alternative jurors. He contends that because "[t]he oath is an integral element of a defendant's *fundamental right* to have his or her guilt decided by an impartial jury," his argument falls within "the denial of fundamental rights" exception to the preservation rule. Mills cites a plethora of caselaw discussing the importance of jurors taking an oath. He also points this panel to cases in other states where appellate courts have held a jury's conviction of a defendant is null if jurors were never sworn in. See *Harris v. State*, 406 Md. 115, 126-27, 956 A.2d 204 (2008) (finding Georgia, California, Indiana, Mississippi, Missouri, Oregon, and West Virginia as states where courts have held a conviction by an unsworn jury is void). He also strongly emphasizes the Kansas Supreme Court's holding in *State v. Baldwin*, 36 Kan. 1, 12 P. 318 (1886). In *Baldwin*, Kansas' highest court determined: "It is highly important and necessary that the oath should be administered to the jury in a criminal case with due solemnity, in the presence of the prisoner, and before the court, and substantially in the manner prescribed by law." 36 Kan. 1, Syl.

But Mills' argument that his claim should be reviewed for the first time on appeal is unpersuasive. No doubt jurors taking an oath "is highly important." 36 Kan. 1, Syl. An important courtroom procedure, however, is not the same as a defendant's fundamental

right. And simply because a juror's oath can be, as Mills frames it, an "element" of a defendant's fundamental right to an impartial jury, does not mean the oath alone is a fundamental right. Mills cites no constitutional provision or caselaw dictating a juror's oath is one right in a defendant's panoply of fundamental rights.

Yet the more dispositive problem for Mills' preservation argument is Kansas appellate courts' recent approach to preservation issues. The Kansas Supreme Court often stresses the importance of trial court counsel making contemporaneous efforts to address courtroom problems. It has even reflected doubt on cases about preservation which "predate this court's more assiduous approach to preservation of error issues." *State v. McCullough*, 293 Kan. 970, 998-99, 270 P.3d 1142 (2012); see also *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010) ("In recent years, however, we have consistently been refusing to review an evidentiary issue without a timely and specific objection even if the issue involves a fundamental right."). When this court is asked to make an exception to the general preservation rule, its decision to do so "is a prudential one" and "[e]ven if an exception would support a decision to review a new claim, we have no obligation to do so." *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). Mills has not provided a persuasive reason why we should consider his claim for the first time on appeal. Because the oath requirement is an "element" of a right and not a right itself, we decline to review the merits of his oath claim.

Second, Mills failed to preserve his argument the district court erred in failing to admonish jurors. Mills maintains "courts have highlighted the importance" of admonishing jurors. He believes admonishing the jury protects his "right to have the jury [*sic*] decided by the twelve jurors empaneled in his case, after they impartially deliberate and review the evidence among themselves." But the exception to the preservation rule is to review "the denial of fundamental rights," not assess rights that might remotely *impact* fundamental rights. Mills fails to point us to any constitutional provision or caselaw

suggesting admonishing a jury is a fundamental right. Indeed, Mills immediately cites to K.S.A. 2023 Supp. 60-248(d) as grounds for the district court's error.

Mills' reliance on K.S.A. 2023 Supp. 60-248(d) is misplaced for a few reasons. Primarily, this statute applies to civil cases and not criminal trials. So K.S.A. 2023 Supp. 60-248(d) is inapplicable to Mills' case. But even if Mills meant to cite K.S.A. 22-3420(b), the relevant statutory location for admonishing juries in criminal proceedings, the statute does not bestow a fundamental right on the defendant. Rather, the statute concerns the conduct of the jury and courtroom procedure. It does not describe admonishing a jury as a fundamental right nor does it even mention the defendant at all. This is in stark comparison to another subsection of the statute which directly discusses defendants. See K.S.A. 22-3420(d) ("The defendant must be present during the discussion of such written questions, unless such presence is waived.").

Along with the incorrect citation and the statute failing to state anything about fundamental rights and defendants, the purported right Mills maintains the statute imparts is not fundamental. And although Kansas appellate courts have not directly equated fundamental rights as constitutional rights for purposes of a preservation analysis, Mills' concern with the admonition of the jury is imparted through a statute not through the Kansas or federal constitution. Despite admonishing a jury being, as Mills puts it, "important," that does not transform a courtroom procedure into a fundamental right. Thus, we decline to assess the merits of his argument.

Third, Mills failed to preserve his argument the district court erred in failing to instruct the jury to begin deliberations anew. Once again, Mills fails to articulate how instructing the jury to begin deliberations anew is a fundamental right. He notes Kansas caselaw requires district courts to instruct the jury to begin deliberations anew if an alternate juror joins the jury after deliberations have commenced. He is correct. See *State v. Cheek*, 262 Kan. 91, Syl. ¶ 3, 936 P.2d 749 (1997) ("After replacing a juror with an

alternate juror during deliberations, the trial court should instruct the jury to begin deliberations anew."). But simply because a district court must take a specific action, does not mean that action is a defendant's fundamental right. Indeed, in describing the district court's duty to instruct jurors to begin deliberations anew, Mills quotes "'right'" as if he recognizes this is no right at all.

Mills fails to cite authority for *any* of these three issues to adequately demonstrate these issues are fundamental rights. He is right that his arguments are important elements in courtroom procedure. Mills, however, does not articulate any compelling reason why, for a Kansas appellate court's first time, we should recognize these three new claims as fundamental rights. And importantly, even if we determine these claims are fundamental rights, Mills still fails to express a persuasive reason why we should decide the merits of the claims given this court's more "assiduous" approach to reviewing preservation of error issues. *McCullough*, 293 Kan. at 998-99.

We therefore find Mills' remaining claims are unpreserved and decline to consider them.

Affirmed.